(No. 47745

MARY MULLIGAN *et al.*, Appellants, v. GEORGE W. DUNNE *et al.*, Appellees.

*Opinion filed Sept. 26, 1975.—Rehearing denied Nov. 21, 1975.*

Patrick W. O'Brien, Wayne W. Whalen, and Steven M. Rasher, of Chicago (Louis L. Biro, Robert G. Pressman, Morton Siegel, and Mayer, Brown & Platt, all of Chicago, and Thaddeus J. Marciniak and George W. Van Cleve (law students), of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Deputy State's Attorney, Michael F. Baccash, Michael A. Tyrrell, Stuart D. Gordon, and Paul P. Biebel, Jr., Assistant State's Attorneys, and Mark Chester (law student), of counsel), for appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

This class action was instituted on June 10 of this year in the circuit court of Cook County by plaintiffs, who include manufacturers, wholesalers, retailers and consumers of alcoholic beverages, unions associated with the liquor industry and registered voters of Cook County, against defendants, County of Cook, George W. Dunne, president of the Board of Commissioners of Cook County and Edward J. Rosewell, treasurer and ex-officio collector of Cook County. They seek a declaratory judgment that the amended Cook County ordinance providing a tax on the retail sale of alcoholic beverages, which was originally enacted on May 5, 1975, violates section 6 of article VII of the Illinois Constitution of 1970 and the due process and equal protection clauses of the Illinois and United States

constitutions.

The circuit court on June 30 stayed the effective date of the ordinance to August 1, and on July 23 granted in major part defendants' motion to dismiss, holding constitutional all provisions of the ordinance except section 4.1, which allowed the seizure and forfeiture without notice or hearing of alcoholic beverages on which the tax was not paid. We allowed plaintiffs' motion for direct appeal to this court pursuant to our Rule 302(b) (58 Ill.2d R. 302(b)), denying a motion to stay the effective date of the ordinance, which has been in effect since August 1, 1975. The circuit court's ruling that section 4.1 of the ordinance is unconstitutional is not challenged by defendants.

Section 1 of the ordinance imposes a tax "on the retail sale in Cook County of all alcoholic beverages *** according to the following schedule: (a) Wines containing 14% or less alcohol by volume, a tax at the rate of 12 cents per gallon or the pro rata portion thereof. (b) Wines containing more than 14% alcohol by volume, a tax at the rate of 30 cents per gallon or the pro rata portion thereof. (c) Alcohol and spirits, a tax at the rate of $1 per gallon or the pro rata portion thereof. (d) Beer, a tax at the rate of 4 cents per gallon or the pro rata portion thereof." The ordinance states the tax is not a "tax upon the occupation of retail or wholesale alcoholic beverage dealers," but is to be borne by the consumer and any failure by retailers to include the tax in the sale price or any effort to otherwise absorb the tax is a violation of the ordinance. The tax is to be collected and paid to the Cook County collector by wholesalers who sell alcoholic beverages to retailers doing business in Cook County. The wholesalers are to collect the tax from the retailers, who in turn collect it from the consumer by including it in the sale price. Section 2 requires wholesalers to register with the Bureau of Administration of Cook County (the Bureau) and report their monthly sales to the county collector on forms prescribed by the Bureau within 45 days of the last day of the month

for which return is due, remitting the tax due with each report. Section 3 authorizes the Bureau to promulgate reasonable rules, definitions and regulations in order to accomplish its duties under the ordinance and specifically provides that the "Bureau may appoint wholesale dealers of alcoholic beverages and any other person within or without the County of Cook as agents for the tax herein levied." Section 3 also requires retailers doing business in Cook County to file with the Bureau a sworn inventory of all alcoholic beverages possessed on the effective date of the ordinance and to pay within 60 days to the county collector the tax due from the retail sale of such inventory unless the tax has already been collected and paid by a wholesaler. Section 4 allows the Bureau the right to inspect all books, records and reports of retailers and wholesalers. Section 5 prescribes penalties for violations of the ordinance and authorizes civil proceedings by the county to recover delinquent taxes. Section 6 declares that the tax is in addition to all other taxes imposed by Federal, State or local governments. Section 7 grants an exemption from the tax for sales of all alcoholic beverages to purchasers who are passengers on interstate carriers and for sales of wine "intended for use and used by any church or religious organization for sacramental purposes." Section 9 is a severability clause, declaring that the validity of the remainder of the ordinance shall not be affected by a holding that one or more of its provisions are unconstitutional.

Plaintiffs initially contend that passage of the ordinance exceeds the scope of the home-rule power to tax granted to Cook County by section 6(a) of article VII of the 1970 Constitution: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." They urge that the

State's extensive taxation and regulation of the liquor industry (Ill. Rev. Stat. 1973, ch. 43, pars. 94 *et seq.*) demonstrate that the subject matter of the ordinance is one of statewide interest which does not pertain to the government and affairs of Cook County within the meaning of section 6(a). We do not agree. The framers of the 1970 Constitution considered the power to tax as essential to effective home rule and intended that power to be broad. (See 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1625-28, 1639-41 (hereinafter cited as Proceedings).) In its report to the Constitutional Convention, the Local Government Committee, which proposed the home-rule article, specifically included a local tax on liquor as one of its examples of valid home-rule ordinances. 7 Proceedings 1656.

Plaintiffs cite as authority several previous decisions of this court restricting to some degree the power of home-rule units, but we find them inapposite. In *Bridgman v. Korzen* (1972), 54 Ill.2d 74, Cook County had enacted an ordinance providing for the payment of real estate taxes in four installments, attempting to supersede the State statute which required payment in two installments. We there held that ordinance invalid because the collection of property taxes for other taxing bodies within the county was not a power or function of Cook County government which pertains to its government and affairs within the contemplation of section 6 of article VII. Unlike the ordinance which we there held invalid, the county's liquor tax ordinance concerns the government and affairs of no other taxing body or unit of government. In *City of Chicago v. Pollution Control Board* (1974), 59 Ill.2d 484, the city of Chicago contended that as a home-rule unit its municipal disposal sites and incinerators were not subject to the State Environmental Protection Act because the collection and disposal of garbage and waste is a governmental function within home-rule powers, the exercise of which had not been restricted by the General Assembly.

While we indicated that a home-rule unit could legislate concurrently with the General Assembly on environmental control, we said that any local legislation would have to conform to the minimum standards set by the General Assembly, for otherwise "it would be difficult if not impossible for the General Assembly to perform the mandate of maintaining a healthful environment imposed upon it by article XI of the 1970 Constitution." (59 Ill.2d 484, 490.) That case, involving the interrelationship between the home-rule provisions of the 1970 Constitution and the separate constitutional provision on the environment, is simply not analogous to the present case, which involves only an interpretation of the home-rule provisions of section 6 of article VII.

The only question then is whether the State has preempted the county's power to tax liquor by its legislation relating to the liquor industry. Section 6(g) of article VII of the 1970 Constitution allows the General Assembly to deny or limit the taxing power of a home-rule unit, but only by a law approved by three fifths of the members of each house. Since "An Act relating to alcoholic liquors" (commonly referred to as the Liquor Control Act or the Dramshop Act) was passed long before the implementation of the 1970 Constitution, it clearly is not an effort by the General Assembly to deny or limit the power of home-rule units to tax liquor. The Act, although admittedly an extensive regulation of the liquor industry, is not specifically declared as exclusive in regard to liquor taxation and in fact recognizes the local interest in liquor control by allowing local governments broad authority regarding closing hours and Sunday sales and licensing, even allowing them the right to completely prohibit the sale of intoxicating beverages. (Ill. Rev. Stat. 1973, ch. 43, pars. 110 through 114, 129, and 166 *et seq.*) Cook County's tax ordinance does not conflict with any portion of the Act, but rather imposes a tax in addition to any imposed by the Act without any attempt to regulate those

areas now regulated by the Act. We have held on several occasions that even an exercise of a home-rule power under section 6(a) which actually conflicts with a statute enacted prior to the adoption of the 1970 Constitution is nonetheless valid unless the power is restricted by a constitutional provision or appropriate legislation enacted subsequent to the 1970 Constitution. (*Peters v. City of Springfield* (1974), 57 Ill.2d 142; *Clarke v. Village of Arlington Heights* (1974), 57 Ill.2d 50; *People ex rel. Hanrahan v. Beck* (1973), 54 Ill.2d 561; *Kanellos v. County of Cook* (1972), 53 Ill.2d 161.) Moreover, we have held that even if enacted subsequent to the Constitution, a statute which purports to restrict home-rule powers must be specific:

"While section 6(g) of article VII authorizes the General Assembly, by a law approved by three fifths of the members of each house, to deny or limit the power of a home-rule unit, it does not follow that every statute relating to the powers of municipalities generally will, if adopted by a three-fifths vote, have a bearing upon the powers of those municipalities which are home-rule units. The powers which those units have received under section 6 of article VII of the constitution of 1970 are in addition to the powers heretofore or hereafter granted by the General Assembly to other municipalities. The kind of inadvertent restriction of the authority of home-rule units for which the plaintiff contends can be avoided if statutes that are intended to limit or deny home-rule powers contain an express statement to that effect. The statute before us contains no indication of a restrictive purpose, and we hold that it had no restrictive effect." (*Rozner v. Korshak* (1973), 55 Ill.2d 430, 435.)

Section 6(i) of article VII clearly provides for situations in

which, as here, the State and home-rule units may act concurrently: "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Additionally, our holding is consistent with section 6(m) of article VII, which provides that "Powers and functions of home rule units shall be construed liberally." Accordingly, since the General Assembly has not by a three-fifths majority chosen to limit the power of home-rule units to tax liquor, Cook County has not exceeded its home-rule power under section 6(a) by the enactment of its liquor tax ordinance.

Alternatively, plaintiffs contend that, even if the taxation of alcoholic beverages is a proper concern of home-rule units, this particular tax is an occupation tax which under section 6(e) of article VII is beyond the power of home-rule units to enact unless authorized by the General Assembly: "A home rule unit shall have only the power that the General Assembly may provide by law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." It is undisputed that the General Assembly has granted to home-rule units no such power to enact occupation taxes. Plaintiffs' argument is, however, directly contrary to our previous decision in *S. Bloom, Inc. v. Korshak* (1972), 52 Ill.2d 56, and must therefore be rejected. (See also *Jacobs v. City of Chicago* (1973), 53 Ill.2d 421.) In *Bloom,* a similar argument was presented regarding the city of Chicago's cigarette tax ordinance, which, like the present ordinance, specifically provided that the burden of the tax was to be borne by the consumer, but paid by the wholesaler, who would collect it from the retailer, who would in turn collect it from the consumer. We held that the city had not passed an occupation tax, since the ordinance clearly placed the legal incidence of the tax on

the consumer, not on the wholesaler or retailer who merely served as collection agents. Plaintiffs argue that *Bloom* is inapplicable because Cook County's liquor tax is distinguishable from Chicago's cigarette tax in that: (1) the liquor tax is far more complex, involving different tax rates on many sizes of bottles (and parts of bottles when served by the drink), causing the tax to often be in fractions of a cent and making it impossible to pass on to the consumer; (2) the tax must be paid on liquor which will never be sold at retail due to breakage, theft, *etc.*, but the ordinance makes no provision for refunds. In our judgment, however, the two taxes are not distinguishable. While it is true that this tax will be more difficult to pass on to the consumer than the simple 5 cents per package tax on cigarettes, the task is hardly impossible. Nor is the fact that the ordinance makes no explicit provision for refunds of consequence. The tax is clearly levied only on retail sales, and forms already issued by the Bureau of Administration pursuant to its authority to enact rules and regulations provide a means of claiming a refund of tax paid on liquor which is never sold at retail. Consequently, under *Bloom,* the county liquor tax is not an occupation tax requiring approval of the General Assembly.

Plaintiffs' due process and equal protection arguments can be summarized as follows: (1) the alleged imposition of the tax on consumers is unrelated to the method of collection, which computes the tax in the first instance upon wholesale transactions, all of which will not result in retail sales, yet the ordinance makes no provision for refunds; (2) a similar argument is raised in relation to the initial floor tax to be paid by retailers on their inventories on hand on the date the ordinance becomes effective; (3) since the liquor on which the tax has been paid may not be sold at retail for many months, wholesalers and retailers are required to remit their own funds to pay the tax well in advance of the event the ordinance purports to tax; (4) the delegation to the Bureau of Administration of author-

ity to pass rules and regulations is an unlawful delegation of legislative power to an administrative body and the forms already adopted by the Bureau are invalid as they have effectively amended the ordinance. Although the implementation of this ordinance by the county and its Bureau of Administration has been criticized as creating confusion for those in the liquor industry, we do not believe the problems are of sufficient magnitude to invalidate the ordinance on due process or equal protection grounds.

As previously noted, there is little to distinguish this collection system from the one we approved in *Bloom* (see also *Heyman v. Mahin* (1971), 49 Ill.2d 284, and *Jacobs v. City of Chicago* (1973), 53 Ill.2d 421), and the failure to specifically provide for refunds in the ordinance, even assuming the necessity therefor, is not fatal since forms issued by the Bureau of Administration allow refunds and apparently will insure that tax is paid only as to those wholesale transactions which actually result in retail sales. Contrary to plaintiffs' contention, these forms do not amend the ordinance but merely implement section 1 of the ordinance, imposing the tax only on the retail sales of alcoholic beverages. Nor do we agree that section 3 of the ordinance, allowing the Bureau to "prescribe reasonable rules, definitions and regulations to carry out the duties imposed upon it by this Ordinance," is an unlawful delegation of legislative power. "Absolute criteria whereby every detail necessary in the enforcement of a law is anticipated need not be set forth in the ordinance itself. While a legislative body cannot delegate its general power to determine what the law shall be, it may delegate to others the authority to do those things which it might properly do itself but cannot do as understandingly or advantageously." (*Brown v. City of Chicago* (1969), 42 Ill.2d 501, 506.) In our judgment, this ordinance "contains sufficient controls and standards so that there is no unlawful delegation of legislative authority." (*Paper Sup-*

*ply Co. v. City of Chicago* (1974), 57 Ill.2d 553, 579; see also *Jacobs* and *Bloom*.) We note too that the Bureau has not exceeded its delegated authority by requiring, through the forms, that retailers remit the tax on purchases from wholesalers located outside Cook County who do not remit the tax. Although the basic collection system prescribed by section 1 of the ordinance requires wholesalers to remit the tax, section 3 states that the "Bureau may appoint wholesale dealers *** and any other person within or without the County of Cook as agents for the tax herein levied." Not only is the requirement by the Bureau that retailers remit the tax in some instances therefore clearly authorized by section 3, it is consistent with the intent of the ordinance to tax all retail sales except those specifically exempted in section 7.

We cannot agree that plaintiffs' property is taken without due process because they must pay the tax out of their own funds well in advance of the taxable event. In *Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill.2d 323, plaintiff employers alleged a denial of due process because the withholding provisions of the Illinois Income Tax (Ill. Rev. Stat. 1969, ch. 120, pars. 7–701 through 7-707) did not allow them compensation for the expenses incurred in collecting the tax. The benefits of the present collection system are similar to those of the income tax withholding system: "Chances for complete evasion of the tax are minimized, delinquencies in collections are reduced, and the costs of enforcement when either occur are obviated. In addition, taxpayers are put on a current basis and tax monies become available to the government at intervals more consonant with its month-to-month needs, perhaps forestalling deficit spending or the need to raise money in anticipation of future tax income." (47 Ill.2d 323, 327.) We upheld the income tax withholding system, noting that "Regulations imposed by a State in the exercise of its police power, when reasonable and adapted to the scope and object sought to be accomplished, are not rendered

unconstitutional even though private property may be injured, interfered with, or damaged without the payment of compensation." (47 Ill.2d 323, 328.) In our judgment, the system utilized to collect Cook County's liquor tax is "reasonable and adapted to the scope and object sought to be accomplished" and is thus not unconstitutional even though plaintiffs may conceivably suffer some minor damage through loss of the use of their money. The floor tax on existing inventories is not due from retailers until 60 days after the effective date of the ordinance, and the tax due on wholesale transactions is not due until 45 days after the close of the taxable month. Even if liquor inventories do turn over slowly as alleged, it would seem obvious that at least in some instances inventories will turn over rapidly enough that plaintiffs will have the use of tax money well before the collection date, offsetting losses that might occur as a result of slower moving inventory. Moreover, plaintiffs, unlike the employers in *Sherman-Reynolds,* will receive a commission of 1% of the tax due on the initial inventory and .5% of the tax due thereafter to cover the costs of collection. Finally, we note that although this ordinance, like many others, may be susceptible of misapplication unless properly implemented by an administrative agency, that fact does not necessarily render it unconstitutional. *Paper Supply Co. v. City of Chicago* (1974), 57 Ill.2d 553, 581; *Jacobs v. City of Chicago* (1973), 53 Ill.2d 421, 426-27; *Stein v. Howlett* (1972), 52 Ill.2d 570, 580.

Plaintiffs next contend that section 6 of article VII deprives plaintiff Mulligan, a registered voter of Cook County, and the class she represents of the right to vote as guaranteed by the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. Section 6(a) of article VII of the 1970 Illinois Constitution provides that a "County which has a chief executive officer elected by the electors of the county and any municipality which had a population of

more than 25,000 are home rule units." Section 4 of article VII provides that "Any county may elect a chief executive officer as provided by law," except that the "President of the Cook County Board shall be elected from the County at large and shall be the chief executive officer of the County." As a result, Cook County became a home-rule county when the Constitution became effective, while voters in all other counties in the State may adopt or reject home rule by their decision on whether to elect a chief executive officer. The voters of Cook County, however, have hardly suffered a deprivation of their right to vote. Not only were they able to vote on the adoption of the 1970 Constitution, which was approved overwhelmingly in Cook County, they also have the constitutional right to choose to divest themselves of home rule: "A home rule unit by referendum may elect not to be a home rule unit" (Ill. Const. (1970), art. VII, sec. 6(b)).

It is clear that the framers considered home rule essential only in Cook County and larger municipalities where "[d]ense concentrations of population and industry call for the creative use of flexible governmental power to achieve and maintain order, social justice and a satisfactory quality of life." (7 Proceedings 1629; see, generally, 7 Proceedings 1628-36.) Although home rule is initially granted Cook County and the larger municipalities because they need the greater local power afforded by home rule, they can at any time elect to do away with home rule, while the other counties and smaller municipalities, whose need for home rule power is not so crucial, nevertheless have the option of choosing home rule at any time the voters feel the need for broader power at the local level. Such a system, including implementing legislation establishing minor variances in the percentages of petitioning voters necessary to referenda on questions of home rule abandonment in Cook, as contrasted to other counties (Ill. Rev. Stat. 1973, ch. 46, par. 28—4; Ill. Rev. Stat. 1973, ch. 34, par. 701 *et seq.*), in our judgment neither impermis-

sibly affects the right to vote of any citizen of this State nor creates a classification that offends the traditional requirements of Federal or State equal protection. *In re Estate of Karas* (1975), 61 Ill.2d 40, 47-48; *McRoberts v. Adams* (1975), 60 Ill.2d 458.

Plaintiffs next assert that section 1 of the ordinance is so impermissibly vague that it offends due process standards. The portion of section 1 alleged to be vague states: "It shall be deemed a violation of this Ordinance for a retail alcoholic beverage dealer to fail to include the tax imposed herein to the sale price of the alcoholic beverage or to otherwise absorb such tax." Plaintiffs interpret this sentence to mean that retailers must absorb the tax in their sale price, while other provisions in the ordinance require just the opposite, that the tax be imposed upon and paid by the consumer. Plaintiffs' interpretation, in our judgment, is simply contrary to the plain meaning of section 1 which, either alone or in conjunction with the remainder of the ordinance, clearly requires that the retailer not absorb the tax by any means but pass it on to the consumer by including the amount of the tax in the sale price.

Plaintiffs' final contention is that Cook County cannot, under its home-rule powers, require out-of-county wholesalers to collect the tax. They initially urge that counties cannot exercise extraterritorial powers, citing numerous cases such as *City of Rockford v. Hey* (1937), 366 Ill. 526, holding that municipal corporations have no authority beyond their borders. Those cases are, however, bottomed primarily upon the absence of statutory authorization for such action, and we regard them as inapposite. Defendants argue that we have already approved such extraterritorial home-rule power in *Bloom* since the cigarette tax ordinance there held to be constitutional required collection by out-of-city wholesalers selling cigarettes to Chicago retailers. However, the extraterritorial issue was neither raised by the parties in *Bloom* nor

discussed by this court, and that case cannot be regarded as resolving this issue. Nor do we believe that *City of Carbondale v. Van Natta* (1975), 61 Ill.2d 483, adopted this term, is dispositive of the question. That case indicates that the proceedings of the 1970 constitutional convention demonstrated an intention not to confer extraterritorial sovereign or governmental power directly on home-rule units, and that the "intendment shown is that whatever extraterritorial governmental powers home-rule units may exercise were to be granted by the legislature."

But the crucial inquiry is not whether home-rule units have extraterritorial powers—rather, it is whether any local unit of government is exercising its taxing power extra-territorially by collecting a tax from sellers located outside the boundaries of the local unit which do business within those boundaries. We think it is not. An ordinance is presumed valid, and the burden of establishing invalidity rests upon those asserting it; that burden has not been met in this case. Perhaps factual situations may be hypothesized in which enforcement of this ordinance as to out-of-county wholesalers would raise substantial constitutional questions. Those facts are not presented here, and we may not assume that enforcement of the ordinance will be attempted under circumstances which would constitute an extraterritorial exercise of taxing power. We add only that it should be clear that no modification of the rule set forth in *Van Natta* is intended by our decision of this issue.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*