(No. 53723

THE CITY OF EVANSTON, Appellee, v. CREATE, INC., Appellant.

*Opinion filed April 17, 1981.—Rehearing*
*denied June 4, 1981.*

104

Samuel W. Witwer, J. Alfred Moran, and Samuel W. Witwer, Jr., of Witwer, Moran, Burlage & Atkinson, of Chicago (Donald W. Kahn, of Skokie, of counsel), for appellant.

Jack M. Siegel, City of Evanston Corporation Counsel, of Chicago, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Plaintiff, the city of Evanston (City), filed a complaint in the circuit court of Cook County seeking declaratory and injunctive relief against Create, Inc. (defendant), a real estate broker and management firm, for its violation of Evanston's Residential Landlord and Tenant Ordinance (Ordinance). Defendant moved to dismiss the action claiming that the Ordinance was an invalid exercise of home rule power under article VII, section 6(a), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, sec. 6(a)). The circuit court granted summary judgment in favor of the City and issued a writ of injunction against further violations of the Ordinance by the defendant. On appeal, the appellate court affirmed. (84 Ill. App. 3d 752.) We allowed defendant's petition for leave to appeal.

This case presents one question: Is an ordinance of a home rule unit of government valid if it imposes certain

conditions upon a rental lease agreement negotiated between a landlord and tenant? Defendant claims that "An Act to revise the law in relation to landlord and tenant" (Ill. Rev. Stat. 1979, ch. 80, par. 1 *et seq.*), passed by the General Assembly, prevents a home rule unit from legislating in the area of landlord-tenant relations. It argues that this area is one of far-reaching statewide interest which requires exclusive State control. Defendant also asserts that the Ordinance impermissibly interferes with the rights of private parties to contract, places a burden on the administration of justice, and has extraterritorial effect.

The goals sought to be achieved by the City in enacting the Ordinance are expressed in section 23½–1.102, where it states:

> "It is the purpose of this Ordinance and the policy of the City of Evanston, in order to protect and promote the public health, safety and welfare of the citizens in the City, to establish rights and obligations of the landlord and the tenant in the rental of dwelling units and to encourage the landlord and the tenant to maintain and improve the quality of housing."

In its complaint, the City specifies certain provisions of the Ordinance which were violated by defendant's lease agreement:

1. The lease did not have attached, as required, a copy of the Evanston Residential Landlord and Tenant Ordinance. (Sec. 23½–5.103.)

2. Upon the giving of a general notice, the lease allows the landlord access to a tenant's apartment within the last two months of a tenancy upon 15 minutes' notice; otherwise, upon a 24-hour notice. (The Ordinance requires the landlord to "give the tenant at least two days notice of his intent to enter." (Sec. 23½–2.103.)

3. The lease excuses the landlord from mitigating his damages in the event of abandonment or subletting by the tenant. (The Ordinance requires

that the landlord "make a good faith effort to rent it at a fair rental." Sec. 23½–4.103.)

4. The lease allows the landlord the right to terminate the tenancy upon giving a 30-day notice. This right is not dependent upon any breach of the lease by the tenant. The landlord is not required to notify the tenant of his lack of intent to renew the lease before the end of its term. (The Ordinance requires that, upon a material breach of the lease by the tenant, the landlord must give the tenant a 45-day notice, in writing, of his intent to terminate the lease. The Ordinance also requires the landlord to send a written notice to the tenant 30 days prior to the expiration of the term of the lease of his intent not to renew the lease.

5. The lease provides for treble damages to the landlord in the event of a holdover tenancy. (The Ordinance provides that in case of holdover a landlord may bring an action for possession and, if the tenant's holdover is wilful, the landlord may recover either two months' rent or twice actual damages, whichever is greater. Sec. 23½–4.301.)

6. The lease provides that the landlord may, upon five days' notice to the tenant, pursue remedies for nonpayment of rent. (The Ordinance requires a 10-day notice in such situations. Sec. 23½–4.101.)

7. The lease provides for various tenant's damages upon breach by the landlord which are not in conformity with sections 23½–4.203, 4.201 and 4.204 of the Ordinance. (These sections allow the tenant to recover attorney's fees if the landlord's breach is wilful; specifies various procedures for termination of the lease; allows the tenant to correct minor defects or to withhold rent upon the landlord's failure to correct minor defects; and

provides for reduction of monthly rent to compensate for code violations or for wrongful failure to supply essential services such as heat, water, electricity, gas, or plumbing.)

Section 6 of article VII of the 1970 Illinois Constitution creates a new concept with respect to the powers of local governmental units that are generally referred to as "home rule" powers. In introducing the report of the Local Government Committee to the delegates of the sixth Illinois constitutional convention, Delegate Parkhurst stated:

"[W] e've got a history in the state of Illinois that goes back 100 years, as we all know, which was described yesterday as Dillon's Rule, and Dillon's Rule says that whenever you've got any kind of a problem between whether a local governmental entity has power or not, you resolve it in favor of the state; and you only have those express powers that are given by statute ***." (4 Record of Proceedings, Sixth Illinois Constitutional Convention 3034 (hereinafter Proceedings).)

"So the first thing we tried to do in our report is to reverse that psychology and that legal philosophy which has pervaded our state and others for, lo, these many years. So we did come to grips with Dillon's Rule and we did try to turn it around 180 degrees." 4 Proceedings 3024.

Similarly, this court has recognized that "[t] he concept of home rule adopted under the provisions of the 1970 constitution was designed to drastically alter the relationship which previously existed between the local and State government." (*Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166.) Thus, the basic grant of home rule power embodied in section 6(a) of article VII is broad and imprecise in order to allow for great flexibility:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur

debt." (Ill. Const. 1970, art. VII, sec. 6(a).)

To further emphasize the grant of broad home rule powers, section 6(m) of article VII mandates:

"Powers and functions of home rule units shall be construed liberally." (Ill. Const. 1970, art. VII, sec. 6(m).)

Recognizing the necessity for legislative control of certain subjects, the delegates enacted sections 6(g) and 6(h) of article VII. Section 6(g) provides a mode by which the legislature may, by a three-fifths majority vote, deny or limit home rule powers. Under section 6(h), the legislature may "provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." (Ill. Const. 1970, art. VII, secs. 6(g), 6(h).) The enactment of a statute after the effective date of the 1970 Constitution does not automatically render the area one of exclusive control by the State under section 6(h) or deny home rule units the power to act under section 6(g). The statute must contain an express statement to that effect. (*Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 528; *e.g.,* see section 2.1 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 614.1).) In the absence of such express legislation, section 6(i) of article VII states:

"Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit ***." Ill. Const. 1970, art. VII, sec. 6(i).

Defendant's first contention is that "An Act to revise the law in relation to landlord and tenant" (Ill. Rev. Stat. 1979, ch. 80, par. 1 *et seq.*) is a comprehensive statutory plan that implies a statewide interest which necessarily prevents the home rule unit from adopting conflicting enactments.

We have consistently found that an ordinance enacted by a home rule unit pursuant to article VII, section 6(a), of the Constitution of 1970 supersedes a conflicting statute enacted prior to the effective date of the Consti-

tution. (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 513; *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 18; *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 527; *Paglini v. Police Board* (1975), 61 Ill. 2d 233, 235; *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 550; *Peters v. City of Springfield* (1974), 57 Ill. 2d 142, 147; *Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50, 53-54; *People ex rel. Hanrahan v. Beck* (1973), 54 Ill. 2d 561, 565-66; *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166-67.) "An Act to revise the law in relation to landlord and tenant" was enacted in 1873. Although minor revisions to various sections have taken place both before and after the effective date of the 1970 Constitution (July 1, 1971), we have found no action to have been taken in the landlord-tenant area by the legislature under either section 6(g) or section 6(h) of article VII to either limit or deny power to home rule units or to expressly declare the area one requiring exclusive State control.

Defendant argues that even if we find no express preemption enacted under section 6(h) of article VII, the long-standing and extensive regulation by the State in the area of landlord and tenant relations would cause this court to find such an overriding State interest as to require the State to retain exclusive control. Such a statewide interest, defendant argues, prevents the area from being one pertaining to plaintiff's government and affairs.

In support of its argument, defendant cites various cases in which this court has held that the home rule unit may not act because of an overriding State concern which requires that the power of the home rule unit be either restricted or denied. In *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, and *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, this court dealt respectively with a home rule unit's power over the collection and disposal of garbage and waste and its

ability to impose zoning restrictions on an Environmental Protection Agency-approved sanitary landfill project. In both cases the court found that the home rule unit could exercise concurrent power with the State legislature on environmental control. The court held, however, that the home rule power was limited in that any local legislation would have to conform with the uniform standard set by the General Assembly so as to allow the State to fulfill the mandate of article XI of the 1970 Constitution by providing "leadership and uniform standards with regard to pollution control." (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 514.) These cases are not analogous to the instant case, since we have no similar constitutional mandate in the realm of landlord-tenant relationships. See *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 548-49.

In *Bridgman v. Korzen* (1972), 54 Ill. 2d 74, the court held invalid an ordinance providing for the payment of real estate taxes in four installments which attempted to supersede the State statute requiring payment in two installments. The court found that such ordinance was beyond the scope of home rule power because the collection of taxes affected other taxing bodies in addition to that of the home rule unit. Consequently, the ordinance was not one strictly pertaining to its government and affairs. In the present case, the City of Evanston ordinance deals only with leases for property within its own borders. The Ordinance makes no attempt to control rental property outside its own boundaries.

In *People ex rel. Lignoul v. City of Chicago* (1977), 67 Ill. 2d 480, the court found statewide concern for the unitary control of banking to be so strong as to make the area one beyond the power of the home rule unit to regulate. Again, the 1970 Constitution in article XIII, section 8, specified that only the General Assembly could, by a three-fifths majority vote, make branch banking pos-

sible. That holding was further buttressed by the fact that the banking business was one "pervasively regulated by the State and Federal governments." *People ex rel. Lignoul v. City of Chicago* (1977), 67 Ill. 2d 480, 486.

In *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256, the court held invalid a home rule ordinance which sought to force the Metropolitan Sanitary District to obtain a city permit in order to build a sewage treatment plant within its borders. The court ruled that the ordinance did not pertain to "its government and affairs" in that the proposed sewage treatment plant would service six other municipalities. Consequently, the court held that the regional interest of the sanitary district precluded the power of the home rule unit. In the present case, the Ordinance does not attempt to control or interfere with the landlord-tenant activities outside its own borders.

We find that none of the above cases cited support defendant's assertion that this is an area demanding exclusive statewide control. We note, however, that defendant's argument has been asserted in many cases in which the court has upheld the exercise of power by the home rule unit.

In *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, voters and various groups associated with the liquor industry challenged Cook County's ordinance which imposed a tax on the retail sales of alcoholic beverages. They argued that the ordinance exceeded the scope of home rule powers under section 6(a) of article VII of the Illinois Constitution of 1970 in that the extensive regulation and taxation of the liquor industry by the State legislature showed that it was "one of statewide interest which does not pertain to the government and affairs of Cook County within the meaning of section 6(a)." (*Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 548.) This court found that, although there were extensive regulations placed upon the liquor industry

by the State, nowhere in the statutory scheme was there evidence of an intent by the legislature that its control be exclusive. The court ruled that, even if the ordinance were in conflict with the statutory scheme, it would nonetheless be valid since no legislation was enacted subsequent to the effective date of the 1970 Constitution to restrict or destroy home rule powers in the area.

In *Peters v. City of Springfield* (1974), 57 Ill. 2d 142, the defendant home rule unit adopted an ordinance reducing the mandatory retirement age of its policemen and firemen from 63 years to 60 years. Plaintiffs, firemen who were retired under the ordinance, argued that the ordinance was beyond the power of the home rule unit in that the General Assembly had enacted a statutory scheme establishing procedures and minimum standards. Plaintiffs asserted that, although the home rule unit could act concurrently with the State under section 6(i) of article VII of the Constitution, such action could not conflict with the standards set by the State. This court disagreed with plaintiffs' contention that the area was one of overriding statewide interest. The court found no support in the act itself to show that the State had any intention to make the area of pensions for policemen and firemen one for its exclusive control.

In *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, the home rule unit enacted an ordinance altering the composition of the Board of Fire and Police Commissioners in direct conflict with a State statute on the subject. The ordinance was attacked on the grounds that it did not conform with the minimum standards established by the legislature. It was also asserted that the matter was one of statewide concern requiring that any concurrent action conform to the statute in order to provide " 'the best possible police protection.' " (*Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 527.) The court found that there was no indication in the act of any need for

statewide uniformity in the area and again found no indication in the statutory scheme that it was meant to be exclusive.

In the present case, we find no evidence of a statewide interest so compelling as to preclude home rule power. The mere existence of State interest and activity in a particular field does not alone preclude home rule activity, absent legislative action to limit or exclude home rule power or to declare it one of exclusive State control. (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 510.) Moreover, allowing a home rule unit to control its unique problems regarding the relationship between landlord and tenant is consistent with the role of home rule. The report of the Local Government Committee states:

> "[T]he committee believes that home-rule powers are most urgently needed by larger municipalities in the more highly urbanized areas of the state. Although the problems of urban society affect many small localities, they are felt most intensely in larger cities and villages. Dense concentrations of population and industry call for the creative use of flexible governmental powers to achieve and maintain order, social justice and a satisfactory quality of life. The renewal of old and deteriorating neighborhoods and business districts which characterize larger municipalities requires extra revenue, better planning and more efficient administration." (7 Proceedings 1628-29.)

The city of Evanston is a densely populated and highly urbanized municipality with a large number of rental units. The City, therefore, has a strong interest in protecting both the landlord and tenant and in providing each with a detailed description of their respective rights, duties and remedies. In accordance with the goals attempted to be achieved by the creation of home rule, the local governing body can create an ordinance specifically suited for the unique needs of its residents and is keenly and uniquely aware of the needs of the community

it serves. We therefore believe that the ordinance in question was one of the types contemplated in the grant of home rule powers under section 6(a) of article VII.

Defendant also argues that it is beyond the power of the home rule unit to interfere with the substantive law of contracts which it claims was done by the Ordinance. It claims that the City is without power to interfere with contracts between private parties. The report of the Local Government Committee is relied on by defendant for this proposition:

> "It is clear, however, that the powers of home-rule units relate to their own problems, not to those of the state or the nation. Their powers should not extend to such matters as divorce, real property law, trusts, *contracts*, etc. which are generally recognized as falling within the competence of state rather than local authorities. Thus the proposed grant of powers to local governments extends only to matters 'pertaining to their government and affairs'." (Emphasis added.) (7 Proceedings 1621.)

However, the Ordinance does not alter any basic principle of contract law. The State has always had the right under police powers to impose conditions on private contractors as long as it was necessary for the public good. (*Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 128.) Consequently, it is beyond question that the State, acting in a reasonable manner in the exercise of its police powers, had the right to adopt statutes which impinged on the activities of private parties to a contract. Notable among such statutes are "An Act to revise the law in relation to landlord and tenant" (Ill. Rev. Stat. 1979, ch. 80, par. 1 *et seq.*), the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 613 *et seq.*), and the statute concerning funeral or burial funds (Ill. Rev. Stat. 1979, ch. 111½, par. 73.101 *et seq.*). (See *Memorial Gardens Association v. Smith* (1959), 16 Ill. 2d 116, upholding the validity of the latter statute as a proper exercise of police power despite its effect on private con-

tracts.) Each of these statutes delineates various conditions which limit private contracts in order to protect the general public under the State's police powers.

Article VII, section 6(a), of the 1970 Constitution placed in the hands of home rule units the power to act under the police power and specifically allows the home rule unit "to regulate for the protection of the public health, safety, morals and welfare." (Ill. Const. 1970, art. VII, sec. 6(a).) Under this grant of power the home rule unit possesses the same power as the State except where those powers are specifically limited by express legislative action under sections 6(g) and 6(h) of article VII. (*City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 273.) We have already ruled that the State has not attempted to make the realm of landlord-tenant relations one for its exclusive control. Therefore, the home rule unit of Evanston may act under its constitutionally granted police powers to pass reasonable regulations concerning the activities of landlords and tenants in order to protect the public health, safety, morals, and welfare. We find such to be the case here. The right of a private party to contract in regard to his property must be subordinate to the overriding needs to protect the interests of the public at large. *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 210-11; *People v. Doe* (1929), 334 Ill. 555, 561; *Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 128. See *Woods v. Soucy* (1897), 166 Ill. 407.

Defendant next contends that the instant ordinance interferes with the unified State judiciary system in that it supplants and materially modifies "An Act to revise the law in relation to landlord and tenant" (Ill. Rev. Stat. 1979, ch. 80, par. 8). Defendant relies on *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, for the proposition that the city of Evanston ordinance impermissibly interferes with the administration of justice, a matter of

exclusive State control. In *Ampersand,* this court invalidated a home rule county ordinance that directed the clerk of the circuit court of Cook County to collect a $2 filing fee in civil cases to support a county law library. The court held that the tax amounted to a "condition to the right to litigate in the courts" and constituted "a burden which cannot be imposed by a home rule unit." (*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 547.) We find *Ampersand* inapposite. Here, there is no condition or barrier placed by the Ordinance upon a citizen's access to the State's court system. The Ordinance does not prevent either landlord or tenant from seeking relief in the courts of the State. The fact that the provisions of the ordinance here in question defines notice procedures, duties of the parties, and remedies available does not interfere with our court system. Courts are regularly called upon to enforce or interpret municipal ordinances.

Defendant's final claim is that the Ordinance is without the powers of section 6(a) of article VII as it has extraterritorial effect. Defendant claims that contracting parties whose residence or business is outside the city boundaries will be subject to the Ordinance. The question of whether a home rule enactment has extraterritorial effect is answered by focusing on the subject being controlled. Here the Ordinance controls only rental property within the borders of the City and affects only the owners and tenants of such property. It makes no attempt to regulate properties of other local units of government.

For the reasons enumerated, the question posed in this case must be answered in the affirmative. We hold that the city of Evanston, a home rule unit, validly exercised its powers under section 6(a) of article VII of the Illinois Constitution of 1970 in enacting the challenged provisions of the Evanston Residential Landlord and Tenant Ordinance. We further find these provisions to be reasonable as an exercise of "the power to regulate for the

protection of the public health, safety, morals and welfare." Therefore, the judgment of the appellate court is affirmed.

*Judgment affirmed.*