THE PEOPLES GAS LIGHT AND COKE COMPANY, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

First District (1st Division)   No. 83—2705

Opinion filed June 18, 1984.

James D. Montgomery, Acting Corporation Counsel, of Chicago (Jerome A. Siegan and Maureen Kelly Ivory, Assistant Corporation Counsel, of counsel), for appellant.

Peter B. Freeman, Michael M. Conway, and William Carlisle Herbert, all of Hopkins & Sutter, and Simon & Spitalli, both of Chicago, for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

The present appeal arises from an action brought by plaintiff, Peoples Gas Light & Coke Company, to have the city of Chicago's "Winter Gas Termination and Reconnection Ordinance" (City of Chicago Municipal Code 1983, ch. 187.1) declared invalid and to permanently enjoin the defendant city from enforcing the ordinance. In a prior interlocutory appeal, we affirmed the trial court's issuance of a temporary restraining order and remanded the case for trial. (*Peoples Gas Light & Coke Co. v. City of Chicago* (1983), 117 Ill. App. 3d 353, 453 N.E.2d 740.) After a hearing on the merits, the trial court held that the subject ordinance is unconstitutional "in that its subject matter is preempted by the Illinois Public Utilities Act." (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 1 *et seq.*) The order also permanently enjoined the city from enforcing the ordinance. The city of Chicago appeals from this order of the trial court, contending that it may currently regulate winter gas terminations and reconnections pursuant to its home rule powers granted under article VII, section 6(a), of the 1970 Illinois Constitution.

The ordinance in question imposes a blanket prohibition against termination of gas service by Peoples Gas to any residential consumers or master metered residential buildings in Chicago during the months of November through March inclusive. This prohibition applies whether or not the customer makes any effort to pay for the service, regardless of the ability of the customer to pay and regardless of the amount owed for gas service. The ordinance further requires Peoples Gas to reconnect gas service during these months to any individual residential consumer who tenders the lesser of $200 or 25% of his or her outstanding bill and to reconnect any residential master metered building whose owner tenders 25% of the outstanding bill.

We believe that this ordinance cannot be properly characterized as an exercise of local governmental power which primarily pertains to the city's government and affairs. Accordingly, such an enactment is beyond the scope of home rule power envisioned by the framers of article VII, section 6(a), of our State constitution.

Prior to the adoption of the 1970 Illinois Constitution, the extent of local governmental power was proscribed by the limits set forth in Dillon's rule. The rule required that local governmental units could only exercise those powers expressly given by State statute. Taken as a rule of construction, Dillon's rule narrowly circumscribed the powers of local government within those limits expressly stated in the statute with all doubts resolved against expanding powers of local

governmental units.

The initial grant of broad home rule powers to units of local government is found in article VII, section 6, of the 1970 Illinois Constitution. The concept of home rule was designed to "drastically alter the relationship which previously existed between local and State government" (*Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166, 290 N.E.2d 240) by giving local governmental entities broad and imprecise home rule powers in order to allow for greater flexibility. Section 6(a) of article VII provides:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Ill. Const. 1970, art. VII, sec. 6(a).)

To completely lay to rest the ghost of Dillon's Rule, section 6(m) provides that "powers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, sec. 6(m).

Once a given matter is determined to be within the broad ambit of home rule power given in section 6(a), the State legislature may act pursuant to sections 6(g) and 6(h) to limit or preempt the exercise of that power by local governmental entities. The sections provide:

> "(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State other than a power or function specified in subsection (1) of this section.
>
> (h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power or a power or function specified in subsection (1) of this Section." Ill. Const. 1970, art. VII, secs. 6(g), (h).

Where the legislature has not specifically acted to limit local governments in areas which are within the scope of home rule, home rule units may act concurrently with the State in exercising governmental power in that area. Section 6(i) provides:

> "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, sec. 6(i).

A review of the above cited constitutional provisions indicates that any home rule analysis will properly proceed along three areas of inquiry. First, it must be determined whether the disputed exercise of local governmental power falls within the scope of home rule powers contemplated by section 6(a). The main restriction contained therein requires that the unit of government must be acting in an area " 'pertaining to its government and affairs.' " (County of Cook v. John Sexton Contractors Co. (1979), 75 Ill. 2d 494, 508, 389 N.E.2d 553.) If the local governmental unit is acting in an area "pertaining to its government and affairs," then it must be determined whether the legislature has preempted this area of otherwise valid home rule power by (1) "specifically" limiting local exercise or (2) "specifically" declaring the State's exercise to be exclusive. (County of Cook v. John Sexton Contractors Co. (1979), 75 Ill. 2d 494, 508, 389 N.E.2d 553.) If the legislature has not taken such "specific" action, it must then be determined what the proper relationship is between the local ordinance and any State legislative acts in the same area.

In general, the main substantive restrictions on the exercise of local governmental power have come from the various constructions of the "pertaining to its government and affairs" clause contained in section 6(a). In Ampersand, Inc. v. Finley (1975), 61 Ill. 2d 537, 338 N.E.2d 15, the supreme court invalidated a home rule county ordinance that directed the clerk of the circuit court of Cook County to collect a $2 filing fee in civil cases to support a county law library. In so doing, the court examined the limitations imposed by the "pertaining to" clause on the otherwise broad home rule grant and noted:

> "The local government committee, explaining the intended extent of this limitation, stated in its report to the constitutional convention, 'It is clear, however, that the powers of home rule units relate to their own problems, not to those of the state or the nation. Their powers should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are generally recognized as falling within the competence of state rather than local authorities. Thus the proposed grant of powers to local governments extends only to matters "pertaining to their government and affairs".' 7 Proceedings 1621." (61 Ill. 2d 537, 540.)

The court went on to hold that the administration of justice was a matter of statewide concern and not a matter pertaining to local government. Accordingly, the county's exercise of home rule power was held invalid since it went beyond the scope contemplated by section 6(a).

Similarly, in *People ex rel. Lignoul v. City of Chicago* (1977), 67 Ill. 2d 40, 368 N.E.2d 100, the supreme court invalidated a city ordinance permitting branch banking. The court found that the State's pervasive interest in banking regulation as evidenced by statute and other constitutional provisions indicated that banking was a matter of statewide concern. Accordingly, the court held that banking regulation was not a matter pertaining to local government and affairs.

The existence of State regulation in a given area has not always resulted in a finding that the area is not one pertaining to local government and affairs. In *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553, the supreme court held that the regulation of sanitary landfills was within the scope of home rule power and that home rule units may legislate concurrently with the State in this area through the use of zoning restrictions even though the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*) comprehensively regulates the use and construction of sanitary landfills through regulations promulgated by the Illinois Environmental Protection Agency. In finding a sufficiently local concern in this area, the court reasoned that the traditional zoning power of counties, the long history of local zoning restriction for intensive land uses, and prior decisions of the court recognizing local concern over garbage collection all mandated a conclusion that county zoning restrictions regarding sanitary landfills pertain to the county's government and affairs. *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 511-12.

Similarly, it has been held that a home rule ordinance regulating leases is not invalid merely because State statute regulates landlord-tenant law (*City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 421 N.E.2d 196), that the taxation of horse racing is within a home rule unit's powers "pertaining to its government and affairs" even though the subject area is extensively regulated by the State (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118), and that a home rule unit's liquor tax is valid notwithstanding the State's extensive regulation and taxation of the liquor industry (*Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6).

The above cases have attempted to define the division of power between the State and local government by construing the "pertaining to" clause of section 6(a). Taken collectively, they stand for the proposition that the limits of home rule should initially be determined by examining the exercise of local governmental power in order to resolve whether or not the matter is one of sufficient local concern as opposed to statewide concern. As such, the words "pertaining to its

government and affairs" contained in section 6(a) have become words of art in defining the limits of home rule power.

In the case at bar, we first look to the report of the local government committee given at the Sixth Illinois Constitutional Convention in order to determine whether or not utility regulation is a matter pertaining to local government and affairs. The report contains several examples of local governmental activity with an accompanying analysis of whether the given activity falls within the scope of home rule power. One example contained in the committee report effectively disposes of the matter before us:

> "Home-Rule City adopts an ordinance limiting the rates that may be charged by the telephone company for local calls. Long standing state regulation of utility rates precludes this subject from being considered a matter pertaining to home-rule government and affairs." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1652.)

We further note that our supreme court has twice quoted the above example as an instance where the subject area was one of overriding statewide concern and therefore not an area pertaining to local government and affairs. *People ex rel. Lignoul v. City of Chicago* (1977), 67 Ill. 2d 480, 486, 368 N.E.2d 100; *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 541, 338 N.E.2d 15.

This fact notwithstanding, the city argues that only utility rate regulation is precluded and that it may concurrently regulate utilities in other areas. We find the cases cited by the city in support of their position inappropriate. In *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 421 N.E.2d 196, on which the city most heavily relies, our supreme court upheld an ordinance which imposed certain conditions on lease agreements between landlords and tenants. While the court noted the existence of some State interest in the field of landlord-tenant law as evidenced by State statute, the court found that the State's interest was not so far-reaching as to preclude a home rule unit from regulating concurrently with the State in this area. (85 Ill. 2d 101, 113.) However, in the present case, the longstanding statewide interest in the field of public utility regulation is manifested by the existence of the Illinois Commerce Commission and by the comprehensive and exclusive regulatory authority the commission has exercised for nearly 70 years. (See *Village of Apple River v. Illinois Commerce Com.* (1960), 18 Ill. 2d 518, 523-25, 165 N.E.2d 329; *City of Chicago v. Hastings Express Co.* (1938), 369 Ill. 610, 615, 17 N.E.2d 576; *Chicago Motor Coach Co. v. City of Chicago* (1929), 337 Ill. 200, 209-10, 169 N.E. 22.) Unlike the field of landlord-tenant law, the

State's interest in uniform utility regulation has traditionally been viewed as strong and pervasive.

Similarly, *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553, does not help the city's cause. In *Sexton*, our supreme court permitted concurrent regulation of sanitary landfills through local zoning even though there existed statewide regulation of landfills by an administrative agency. However, as previously noted, the court's finding that this area was one pertaining to local government and affairs was predicated on the traditional zoning power of counties and prior decisions of the court emphasizing local concern over garbage collection. (75 Ill. 2d 494, 511-12.) In the case before us, there is no such history of local control. The regulation of all aspects of utility business and service has long been held to be the exclusive province of the Illinois Commerce Commission (*Village of Apple River v. Illinois Commerce Com.* (1960), 18 Ill. 2d 518, 523-25, 165 N.E.2d 329; *City of Chicago v. Hastings Express Co.* (1938), 369 Ill. 610, 615, 17 N.E.2d 576; *Chicago Motor Coach Co. v. City of Chicago* (1929), 337 Ill. 200, 209-10, 169 N.E. 22) and the exclusivity of the commission's jurisdiction has been repeatedly upheld against the assertions of municipal authority over matters of health and welfare (see, *e.g., City of Witt v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1927), 324 Ill. 494, 155 N.E. 325 (striking down a municipal ordinance regulating the speed of trains within city limits); *Northern Trust Co. v. Chicago Rys. Co.* (1925), 318 Ill. 402, 149 N.E. 422 (striking down a municipal ordinance requiring street cars to be equipped with headlights)). Accordingly, the city is not exercising traditional regulatory powers in an area of traditionally local concern as the county was in *Sexton.*

We find that our State legislature and the courts of this State long ago recognized the overriding need for uniform, comprehensive utility regulation by vesting exclusive regulatory jurisdiction over this area in a single regulatory agency. Permitting every home rule unit in this State to regulate in this field would subject utilities to multiple and sometimes conflicting governmental requirements which could only result in confusion and would seriously disrupt the regulatory scheme now in place. The comments of the local government committee clearly demonstrate that the framers of our State constitution never considered utility regulation to be a proper subject of local legislation since this area was always " 'recognized as falling within the competence of state rather than local authorities' " (*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 540, 338 N.E.2d 15). Accordingly, utility regulation cannot be considered a matter pertaining to local gov-

ernment and affairs.

In view of the foregoing, we hold that the city's ordinance does not fall within the broad ambit of home rule power contemplated by article VII, section 6(a), of our State constitution. We therefore affirm the judgment of the trial court permanently enjoining the city from enforcing its ordinance.

Affirmed.

GOLDBERG and CAMPBELL, JJ., concur.