# Illinois Official Reports

## Supreme Court

---

### *Hertz Corp. v. City of Chicago*, 2017 IL 119945

---

| | |
|---|---|
| Caption in Supreme Court: | THE HERTZ CORPORATION *et al.*, Appellants, v. THE CITY OF CHICAGO *et al.*, Appellees. |
| Docket Nos. | 119945, 119960 cons. |
| Filed | January 20, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Daniel T. Gillespie, Judge, presiding. |
| Judgment | Appellate court judgment reversed. |
| Counsel on Appeal | Michael A. Scodro, Ross B. Bricker, John F. Ward, Jr., Barry Levenstam, and Clifford W. Berlow, of Jenner & Block LLP, of Chicago, for appellant Hertz Corporation.<br><br>Kevin M. Forde and Joanne R. Driscoll, of Forde Law Offices LLP, and Stanley R. Kaminski, Amy E. McCracken, and Elinor H. Murárová, of Duane Morris LLP, both of Chicago, for appellant Enterprise Leasing Company of Chicago, LLC.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellees. |

Michael J. Wynne, Adam P. Beckerink, Jennifer C. Waryjas, and Douglas A. Wick, of Reed Smith LLP, of Chicago, for *amicus curiae* Taxpayers' Federation of Illinois.

Theodore R. Bots and Julie S. Townsley, of Baker & McKenzie LLP, of Chicago, for *amicus curiae* Illinois Chamber of Commerce.

Justices        JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1      Defendant, the city of Chicago (City), imposes a tax on the use of personal property within its borders. The tax applies to the lease of personal property within the City and to the use of property in the City that is rented or leased outside the City. In 2011, the City's director of the department of revenue (now the City comptroller) issued Ruling 11, which provided guidance to suburban vehicle rental agencies located within three miles of Chicago's borders, including plaintiffs, as to the collection of the tax. Personal Property Lease Transaction Tax Second Amended Ruling 11 (eff. May 1, 2011) (Ruling 11). Ruling 11 stated that beginning July 1, 2011, in the event of an audit, the City department of revenue (Department) would hold the suburban rental agencies responsible for paying the tax unless there was written proof that the lessee was exempt from paying the tax based upon the use of the leased vehicle outside the City. In the absence of such proof, Ruling 11 provided, the Department would assume that a customer who is a Chicago resident would use the leased vehicle primarily in the City and that a customer who is not a Chicago resident would use the vehicle primarily outside the City.

¶ 2      Plaintiffs, the Hertz Corporation (Hertz) and Enterprise Leasing Company of Chicago (Enterprise), separately filed suit in Cook County circuit court against the City and the City comptroller, seeking a declaration that the tax violates the Illinois and United States Constitutions and requesting an injunction to prevent the City from enforcing the ordinance as to them. The circuit court granted summary judgment to plaintiffs, declaring that Ruling 11 was facially unconstitutional and permanently enjoining the City from enforcing the ordinance against plaintiffs with respect to short-term vehicle rental transactions occurring outside the City's borders. The appellate court reversed.

¶ 3                       BACKGROUND

¶ 4      The Chicago personal property lease transaction tax ordinance (Chicago Municipal Code § 3-32-030(A) (added Dec. 15, 1992)) levies a tax on the lease or rental in the City of personal property or the privilege of using in the City personal property that is leased or rented outside

the City. The obligation to pay the tax is upon the lessee of the personal property. The lease or rental of the property is deemed to take place at the location where the lessee takes possession or delivery of the personal property. Chicago Municipal Code § 3-32-030(C) (added Dec. 15, 1992). The use in the City of personal property leased or rented outside the City is exempt from the tax if it is primarily used (more than 50%) outside the City. Chicago Municipal Code § 3-32-050(A)(1) (added Dec. 15, 1992).

¶ 5     In May 2011, the then-director of the City's department of revenue promulgated a second amended ruling, Ruling 11, to explain the administration and enforcement of the ordinance as applied to suburban short-term vehicle rental locations within three miles of the City's borders. The ruling applies to vehicle rental companies that are doing business in the City, defined as having a rental location in the City or regularly renting vehicles that are used in the City, such that the company is subject to audit by the Department. *Id.* § 3. Ruling 11 advises vehicle rental companies doing business in the City, when renting from a suburban location within three miles of the City's borders to a customer who will use the vehicle in the City, to maintain written records that support any claim of exemption from the tax, for the company's use in the event of an audit. In such an event, the ruling states, absent written proof to the contrary, the Department will assume that a customer who is a Chicago resident, based upon the customer's driver's license, will use the vehicle in the City and is thus subject to the tax. Conversely, the ruling further states that the Department will assume that a customer who is not a Chicago resident will use the vehicle primarily outside the City and thus be exempt from the tax. Ruling 11 suggested the following provisions for inclusion in rental agreements, which, when selected by the customer, would be deemed by the Department to be acceptable evidence of taxable and exempt transactions:

> "___By initialing this space you are notifying us that you plan to use this vehicle 50% or more of the time (including garaging) in the City of Chicago.
> ___ By initialing this space you are notifying us that you plan to use this vehicle more than 50% of the time (including garaging) outside the City of Chicago." *Id.*

¶ 6     Section 4 of Ruling 11 states that, as a policy matter, the Department has decided that it will not audit or assess any motor vehicle rental companies for rentals from locations more than three miles outside the City's border. Ruling 11 further states that in the event of a change in policy, the Department will provide at least 120 days' notice of the change, which would be prospective only. *Id.* § 4. Ruling 11 contains a "safe harbor" provision, which states that in lieu of maintaining written records, a suburban motor vehicle rental company subject to the ruling may assume that 25% of its rental charges to customers who are Chicago residents are for vehicles that will be used primarily in Chicago and the company may then pay the tax on that amount. *Id.* § 5.

¶ 7     Subsequent to the issuance of Ruling 11, Enterprise sought guidance from the Department on whether its current lease agreement was sufficient to provide an exemption from the tax. That agreement informed the lessee of the vehicle that a city tax may apply if the leased vehicle is used primarily in the City. The agreement further advised the lessee to request a tax form for remittance of the tax directly to the City should the lessee intend to use the vehicle primarily in Chicago. The City found the agreement insufficient to support an exemption from the tax, reasoning that silence by a Chicago resident as to the intended use of the vehicle did not

constitute a claimed exemption by the lessee and that a Chicago lessee should be required to expressly inform Enterprise whether the intended use of the car would primarily be in Chicago.

¶ 8 Plaintiffs filed separate actions against the City, seeking declaratory and injunctive relief. Those actions were later consolidated. Plaintiffs alleged that Ruling 11 (1) violates the due process clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV, § 1) based upon the alleged extraterritorial nature of the tax; (2) has an unauthorized extraterritorial effect in violation of article VII, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6); (3) is unauthorized because it exceeds the scope of and is prohibited by the ordinance imposing the tax; and (4) violates the commerce clause of the United States Constitution (U.S. Const., art. I, § 8, cl. 3). Plaintiffs further alleged that the tax ordinance itself is unconstitutional with respect to extraterritorial transactions. Hertz separately alleged that the retroactive application of Ruling 11 is illegal.

¶ 9 Enterprise filed a motion for preliminary injunction, and the City filed separate motions to dismiss the complaints. The circuit court denied the City's motions and granted Enterprise's motion for preliminary injunction. Enterprise filed a motion for summary judgment, which Hertz joined. The circuit court granted plaintiffs summary judgment. The court found that Ruling 11 is an exercise of improper extraterritorial taxing authority because the taxable event, *i.e.*, the lease transaction, takes place outside the City's boundaries. The court also found that Ruling 11 exceeds the scope of the tax ordinance by improperly extending the reach of the ordinance to transactions that take place outside Chicago's borders. Finally, the circuit court found that Ruling 11 violates the due process and commerce clauses of the United States Constitution.

¶ 10 The appellate court reversed. It first rejected plaintiffs' characterization of the tax as a transaction tax. Based upon the plain language of the tax ordinance, the court found that the tax is in fact a use tax on the privilege of using leased tangible personal property inside the City. 2015 IL App (1st) 123210, ¶ 22. The court held that because plaintiffs had rental locations in the City and, therefore, did business in the City, they could be required to collect the use tax at their suburban locations. *Id.* ¶¶ 26-27. The court found a sufficient nexus between plaintiffs and the taxable activity, *i.e.*, use of the vehicles in Chicago, to permit the tax to be imposed and collection duties placed on plaintiffs. *Id.* ¶ 31. The appellate court also rejected plaintiffs' other arguments. We granted plaintiffs' petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. Mar. 15, 2016)), and the cases were consolidated for review. We allowed the Illinois Chamber of Commerce and the Taxpayers' Federation of Illinois to file briefs *amici curiae* pursuant to Illinois Supreme Court Rule 345 (eff. Sept. 20, 2010).

¶ 11                                                      ANALYSIS

¶ 12 The circuit court granted summary judgment to plaintiffs. Summary judgment is proper when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). This court reviews a grant of summary judgment *de novo*. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93 (2010).

¶ 13 Plaintiffs argue that Ruling 11 (1) extends the reach of the tax ordinance beyond Chicago's borders in violation of the home rule provision of the Illinois Constitution and (2) violates the federal due process and commerce clauses. We first address plaintiffs' home rule argument.

¶ 14    Article VII, section 6(a), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(a)) allows home rule units to exercise "any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Home rule units may exercise concurrently with the State "any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). In *City of Carbondale v. Van Natta*, 61 Ill. 2d 483, 485 (1975), this court held that the intent of the framers of the home rule article was that whatever extraterritorial governmental powers home rule units may exercise must be granted by the legislature. Thus, home rule units may not extend their home rule powers, such as the taxing power, beyond their borders unless expressly authorized by the General Assembly.

¶ 15    Plaintiffs argue that Ruling 11 is an unconstitutional extraterritorial exercise of the City's home rule authority in two ways. They argue that (1) no part of the transaction takes place within Chicago's borders and (2) 100% of the cost of a car's rental is taxed even though Ruling 11 requires that the car be driven in Chicago for only 50% of the time to be subject to the tax. Plaintiffs assert that this court's decision in *Commercial National Bank of Chicago v. City of Chicago*, 89 Ill. 2d 45 (1982), is dispositive of this appeal.

¶ 16    In response, the City denies that Ruling 11 imposes a tax on transactions or use outside Chicago. The City argues that the tax applies only to residents of Chicago or to those who use a rental car in Chicago for at least 50% of the rental period. The City further argues that plaintiffs erroneously rely on *Commercial National Bank* for their argument that the City may not tax 100% of the transaction cost when the required taxable use is only 50% of the time the leased vehicle is driven in Chicago.

¶ 17    In *Commercial National Bank,* this court considered the constitutionality of Chicago's service tax ordinance, which imposed a tax on a purchaser who purchased service in the city at the rate of 1% of the purchase price of the service. Collection and remittance duties were placed on the seller, who was also liable for uncollected taxes. The plaintiffs challenged the tax on grounds that it was an unconstitutional tax upon occupations, which required express legislative authorization under article VII, section 6(e), of the Illinois Constitution. The plaintiffs also argued that the ordinance was an impermissible extraterritorial exercise of the City's home rule power. The ordinance stated that a purchase of service was considered to be in the City if the purchaser was in the City at the time the service was provided, or the seller was in the City at that time, and 50% or more of the service was substantially performed, received, rendered, provided and received, or used in the City.

¶ 18    This court held the ordinance violated article VII, section 6(e), of the Illinois Constitution because it amounted to a tax on occupations. The court also held that the ordinance violated article VII, section 6(a), due to its extraterritorial effect, stating:

    "It cannot be doubted that this ordinance has extraterritorial effects for both purchasers and sellers of service. A nonresident purchaser would be liable for the tax even though his only contact with the city might be through dealings with sellers of service 'in the city.' A nonresident purchaser could contract with a nonresident seller of service and if that seller 'substantially performs' the service in the city both are then liable for the tax on the entire transaction. To 'substantially perform' the service in the city, the seller

- 5 -

need only perform 50% of the work or incur 50% of the cost in the city, but the tax would be on the total value of the services. This is a clear attempt by the city of Chicago to give extraterritorial effect to its ordinance and to tax services that have no connection with the taxing city." *Commercial National Bank*, 89 Ill. 2d at 77.

The court noted it was not holding that nonresidents of a home rule unit can never be taxed by that unit. However, the home rule unit cannot tax services neither rendered nor performed in the taxing entity's jurisdiction. *Id.* at 78.

¶ 19    In *Commercial National Bank*, this court cited its decision in *Mulligan v. Dunne*, 61 Ill. 2d 544 (1975), in which the court upheld a Cook County ordinance. That case involved an ordinance imposing a tax on the retail sale in Cook County of all alcoholic beverages. The tax was to be collected and paid to the Cook County collector by wholesalers who sold such beverages to retailers doing business in the county. The retailers, in turn, were to collect the tax from consumers by including it in the purchase price. The ordinance was challenged by the plaintiffs on several grounds, one of which was that it exceeded the home rule authority of the county by requiring out-of-county wholesalers to collect the tax. This court held that it was not an exercise of extraterritorial powers to collect a tax from sellers located outside the boundaries of the governmental unit who do business within the boundaries of that unit. *Id.* at 558.

¶ 20    This court noted in *Commercial National Bank* that in all its prior decisions on home rule unit taxing power, the products or services taxed were purchased or used within the territorial limits of the home rule unit. In contrast, the ordinance in *Commercial National Bank* purported to tax services performed outside the city. Given the number of local governmental units, particularly in the Chicago area, the court noted, unrestrained extraterritorial exercise of the powers of taxation and zoning and in other areas could create serious problems, as each home rule unit in Illinois could exercise such powers. *Commercial National Bank*, 89 Ill. 2d at 78-79.

¶ 21    Plaintiffs note that the lease transactions in this case occur entirely outside the borders of Chicago. The lease is negotiated and signed outside of Chicago, and the leased vehicle is delivered to the customer outside of Chicago. Thus, according to plaintiffs, Ruling 11 impermissibly requires them to act as the City's tax collectors when none of the rental transaction occurs within Chicago. The City emphasizes that the only taxable event is use of the leased vehicle in Chicago by residents of Chicago. Thus, according to the City, the extraterritoriality problem identified by *Commercial National Bank* does not arise. The City distinguishes that case because it involved a "service tax," whereas Ruling 11 involves a "use tax," which the City argues is a tax on the privilege of using property in Chicago. The City finds it significant that, once paid, a use tax entitles the taxpayer to use the property an unlimited number of times within the taxing jurisdiction.

¶ 22    In support of these arguments, the City cites *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332 (2010), in which this court upheld a use tax assessed by the Illinois Department of Revenue on the total purchase price of an airplane that was hangared in Nebraska but used about half of the time in Illinois. The plaintiff challenged the tax under the commerce clause on the ground that the airplane lacked a substantial nexus to Illinois. In the alternative, the plaintiff argued that even if the tax were permissible, it should have been based on the airplane's actual use in Illinois, rather than the total purchase price. This court rejected both arguments. As to the substantial nexus argument, the court noted there must be a

connection to the activity taxed itself, rather than a connection to the individual or corporation taxed. Physical presence in the taxing jurisdiction is required. The court noted evidence of over two hundred takeoffs and landings and overnight presence in Illinois on several occasions. This court thus found a sufficient nexus to Illinois to permit the use tax to be imposed. As to the apportionment argument, this court noted that the Use Tax Act contains an exemption from use tax for tangible personal property that has been subjected to sales or use taxes in other states and that the United States Supreme Court had held that such credits satisfy both the issue of multiple taxation and the requirement that a tax on interstate commerce be fairly apportioned. *Id.* at 347.

¶ 23    *Irwin* involved a due process challenge under the federal constitution. It did not involve any issue of home rule authority. Similarly, *First Access Material Handling v. Wish*, 297 Ill. App. 3d 396 (1998), another case cited by the City, involved a due process challenge under the federal and Illinois Constitutions to a use tax assessed by the Chicago department of revenue on items of personal property owned by the plaintiff and leased to lessees located in Chicago. The plaintiff's offices were all located outside Chicago. One of the plaintiff's arguments was that the Department had improperly used the full value of each piece of equipment in calculating the amount of the tax rather than apportioning the tax to take into account the period of time during which the equipment was actually used in Chicago. The ordinance in question imposed a use tax on the privilege of using in Chicago nontitled tangible personal property at the rate of 1% of the full purchase price of the property. The appellate court held that the Department did not violate the plaintiff's due process rights, noting that due process requires a minimum connection between the taxpayer and the taxing body. The court noted that the use tax at issue was a tax on the privilege of using property within Chicago's borders and that, once paid, the plaintiff may use the property as frequently as it wishes in Chicago and the court could not determine from the record how often the plaintiff would do so. Thus, the court found, it was not a violation of due process to refuse to apportion the tax to reflect the property's use outside of Chicago. *Id.* at 405.

¶ 24    The City's reliance on due process cases is misplaced. It cites no authority for equating the concepts of due process and home rule authority under the Illinois Constitution. These cases therefore do not support the City's arguments. As for the City's distinguishing of *Commercial National Bank* on the basis that it concerned a tax on services and the instant case concerns a tax on use of leased vehicles, we find no meaningful distinction. The question here is whether the City has improperly extended its home rule power to tax beyond its borders by requiring plaintiffs to collect the subject tax from vehicle lessees who state their intention to use the vehicle at least 50% of the time in Chicago. It does not matter whether the taxed commodity is services or use of personal property.

¶ 25    The City notes that this court held the service tax in *Commercial National Bank* was imposed on nonresident sellers and purchasers of service, and it points out that the tax in this case is imposed only on residents of Chicago. The City cites no authority for the proposition that mere residence in a taxing jurisdiction gives that jurisdiction the ability to impose taxes on the resident regardless of whether the taxed property or activity is connected to the taxing entity. In fact, Ruling 11 recognizes that a Chicago resident may not be subject to the tax if he or she indicates an intention to use the leased vehicle primarily outside Chicago. In such an event, the City takes that lessee at his or her word, and the tax is not imposed. Similarly, if a non-Chicago resident indicates an intention to use the leased vehicle primarily in Chicago, the

tax would apply; thus, the tax, at least as it relates to the intention of the lessee, does not depend on residency.

¶ 26    The City regards it as indisputable that entities doing business within the boundaries of a taxing jurisdiction may be required to collect taxes outside the boundaries of that jurisdiction. The City cites *Mulligan*, in which out-of-county wholesalers were required to collect sales taxes when selling alcoholic beverages to retailers within Cook County. The City also cites *S. Bloom, Inc. v. Korshak*, 52 Ill. 2d 56 (1972) (out-of-county tobacco wholesalers required to collect sales tax from retailers who sell cigarettes to customers in Chicago), and *American Beverage Ass'n v. City of Chicago*, 404 Ill. App. 3d 682 (2010) (wholesalers and retailers required to collect sales tax on sales of bottled water). In each of these cases, however, the tax was levied on sales of tangible personal property that took place within the borders of the taxing jurisdiction. Thus, the connection between the taxing jurisdiction, the items taxed, and those businesses responsible for collecting the tax was clear. The sellers of the taxed items did business in Chicago by selling the taxed items either to retailers located in Chicago or to consumers from locations within Chicago. To the extent the sellers were located outside the taxing jurisdiction, that fact was irrelevant because they did business in the jurisdiction by selling the taxed items within the borders of the taxing jurisdiction. The City seeks to expand these cases to the present situation by arguing that because plaintiffs have business locations in Chicago, they are doing business in Chicago and, because they are doing business in Chicago, the City may require them to collect use taxes on transactions outside Chicago's borders based upon the lessee's stated intent as to use of the leased vehicle or, in the alternative, the lessee's residence, failing a statement of intent.

¶ 27    The City's cited cases, however, do not support this argument. The cases relied on by the City involved a tangible connection to the taxing jurisdiction either through delivery of the taxed items into the taxing entity or through sale of the taxed items inside the borders of the taxing jurisdiction. Here, Ruling 11 taxes the stated intention of the lessee to use the leased vehicle inside Chicago's borders. At oral argument in this case, the City's counsel asserted that a lessee's statement of intent is evidence of use inside Chicago. We disagree. A statement of one's intent is evidence only of present intent, not of actual use, which takes place at some time in the future. The fact is that, at the time of the lease transaction, the use of the leased vehicle has not taken place and may never take place within Chicago's borders. There is no delivery of the leased vehicles into Chicago, and the lease transactions take place wholly outside Chicago. At most, there is only a tenuous connection between the City and the taxed transaction. Ruling 11 also taxes presumed use of the leased vehicle. Absent a stated intention from the lessee regarding where the vehicle will be driven, the tax is imposed based solely upon the residence address shown on the lessee's driver's license. The transactions in the instant case are thus far different from the ones in cases cited by the City.

¶ 28    The City also argues that plaintiffs are "doing business" in Chicago because, by "setting up shop so close to Chicago," they are leasing vehicles to customers who will drive them on a short-term basis in Chicago. According to the City, because their vehicles are driven on Chicago streets and parked there, plaintiffs enjoy municipal services such as police and fire protection, as well as maintenance of Chicago's streets. Thus, provision of these services gives the City the right to require tax collection by plaintiffs for transactions that occur outside Chicago's borders. The City cites *City of Evanston v. Create, Inc.*, 85 Ill. 2d 101 (1981), in support of this argument. That case involved a city ordinance that imposed certain conditions

on every lease of residential real estate located within Evanston's borders. The defendant, a real estate broker and management firm, argued that the area of landlord-tenant law was subject to exclusive State control and thus outside the authority of Evanston, as a home rule unit. This court rejected that argument. The defendant also claimed that the ordinance had an extraterritorial effect because contracting parties whose residence or business was outside the city would be subject to the ordinance. This court also rejected this argument, noting that the ordinance controlled only rental property within the city's borders and affected only the owners and tenants of such properties. *Id.* at 116.

¶ 29 The City's reliance on *Create* is misplaced. The property affected by the ordinance in that case applied only to property actually located within the home rule unit's boundaries. There was no extraterritorial effect. Here, in contrast, the City's use tax is imposed not on actual use within the City's borders but on the lessee's stated intent to use the property in Chicago or, failing any statement of intent, on presumed use based upon the lessee's residence address. The two situations are not similar.

¶ 30 None of the City's cited cases bears any similarity to the case at bar. Here, the City seeks to tax use of rental vehicles in Chicago, but in fact, the tax is imposed on stated intent as to future use or on a conclusive presumption of use based on Chicago residency, absent a statement of intent. The stated intent as to use in Chicago may or may not actually take place. Further, the conclusive presumption of taxability based on residency has nothing to do with use of the rental vehicles, as there is no evidence of where the vehicle was in fact driven. Absent an actual connection to Chicago, the City's tax under Ruling 11 amounts to a tax on transactions that take place wholly outside Chicago's borders. This court warned in *Commercial National Bank* that unrestrained extraterritorial exercise of home rule powers in zoning, taxation, and other areas could create serious problems, given the number of home rule units in Illinois, particularly in the Chicago area. Sanctioning the tax here based on nothing more than a lessee's stated intention or a conclusive presumption of use in Chicago based solely on residency would allow other home rule units in the Chicago area to enact their own use taxes in similar circumstances. This would result in greatly expanded obligations on vehicle lessees to estimate the percentage of use they intend to make in each taxing jurisdiction and on motor vehicle rental companies to collect and remit taxes to multiple jurisdictions. The drafters of our constitution limited the extraterritorial exercise of home rule powers to those enacted by the legislature. *Commercial National Bank*, 89 Ill. 2d at 79. Ruling 11 exceeds the scope of the City's home rule authority.

¶ 31 Accordingly, we hold that Ruling 11 violates the home rule article of our constitution because it has an extraterritorial effect and is therefore an improper exercise of the City's home rule powers. In light of our holding, we need not address the parties' remaining arguments.

¶ 32                                                            CONCLUSION

¶ 33 We hold that Ruling 11 is unconstitutional under the home rule article of the Illinois Constitution. We therefore reverse the judgment of the appellate court.

¶ 34 Appellate court judgment reversed.