(No. 48787.-

THE PEOPLE *ex rel.* RICHARD K. LIGNOUL, Commissioner of Banks and Trust Companies, Appellee, v. THE CITY OF CHICAGO *et al.*, Appellants.

*Opinion filed September 20, 1977.*

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Assistant Corporation Counsel, of counsel), for appellants City of Chicago *et al.*

Ray H. Greenblatt, Wayne W. Whalen and Thaddeus J. Marciniak, of Chicago (Mayer, Brown & Platt, of Chicago, of counsel), for appellant Continental Illinois National Bank & Trust Company of Chicago.

Joseph DuCoeur and Alan I. Becker, of Chicago (Kirkland & Ellis, of counsel), for appellant First National Bank of Chicago.

William J. Scott, Attorney General, of Springfield (Jerome Webb, Assistant Attorney General, of Chicago, of counsel), for appellee.

O'Brien, Carey, McNamara & Scheuneman, Ltd., of Chicago (Barry T. McNamara, Peter B. Carey, Tom Scheuneman and Marilyn F. Kalata, of counsel), for *amicus curiae* Independent Community Banks in Illinois.

Donald X. Murray, of the Illinois Bankers Association, and Edwin H. Conger and Sari S. Escovitz, of Tenney & Bentley, of Chicago, for *amicus curiae* the Illinois Bankers Association.

Coffield & Ungaretti, Ltd. (Michael W. Coffield and James E. Dahl, of counsel), for *amicus curiae* the Association for Modern Banking in Illinois.

MR. JUSTICE DOOLEY delivered the opinion of the court:

In 1976 the Chicago city council passed what is known as the Chicago Financial Services Ordinance. The People of the State of Illinois, on relation of the commissioner of banks and trust companies, filed this action against the city of Chicago and its city clerk seeking to have the law declared unconstitutional. Two Chicago banks were permitted to intervene as defendants. Summary judgment was entered in the circuit court of Cook County for plaintiff on the basis that the ordinance permitted branch banking and hence was void under article XIII, section 8, of the Illinois Constitution of 1970. Defendants have appealed directly to this court under Rule 302(b) (58 Ill. 2d R. 302(b)).

The sole question before us is the constitutionality of this ordinance.

The ordinance permits both State and federally chartered banks to perform banking functions at certain facilities and electronic banking machines in community offices located away from the main office of the bank. The ordinance in part provides:

"b). 'Community Office' means any office maintained by a financial institution separate and apart from its main office, at which office such financial institution

1) solicits loans for such financial institution

2) gives information about any aspect of its business

3) answers customers' inquiries concerning any business which such customers have with the financial institution, or

4) furnishes advice to customers concerning any of their business with such financial institution.

c). 'Electronic Banking Machine' shall mean any mechanical device not operated by a financial institution employee, such as an automatic teller or point of sale terminal by means of which

1) cash or other items may be placed for deposit in any account at such financial institution

2) transfers of funds may be made from one account at such financial institution to another account at such financial institution

3) cash may be withdrawn from any account at such financial institution

4) the proceeds of loans from such financial institutions may be disbursed

5) bills of such financial institutions or of third parties may be paid by debiting any account at such financial institution, or

6) the balance in any account at such financial institution may be ascertained."

Section 6 of the Illinois Banking Act (Ill. Rev. Stat. 1975, ch. 16½, par. 106) states:

"No bank shall establish or maintain more than one banking house, or receive deposits or pay checks at any other place than such banking house, and no bank shall establish or maintain in this or any other state of the United States any branch bank, nor shall it establish or maintain in this State any branch office or additional

office or agency for the purpose of conducting any of its business."

What constitutes branch banking is further defined by section 2 of the Act (Ill. Rev. Stat. 1975, ch. 16½, par. 102). When originally enacted in 1955 (1955 Ill. Laws 84, sec. 2) section 2 provided:

"A 'banking house', 'branch bank', 'branch office' or 'additional office or agency' within the meaning of the prohibitions of Section 6 hereof shall include any branch bank, branch office or additional house, office, agency or place of business at which deposits are received or checks paid, or any of a bank's other business is conducted, but shall not include any place at which only records thereof are made, posted, or kept."

In 1965 section 2 was amended by an amendment adopted at a referendum election in 1966 to add what is presently the last sentence (1965 Ill. Laws 2020, 2021), which reads:

"A place at which deposits are received or checks paid or any of a bank's other business is conducted shall not be deemed to be a branch bank, branch office or additional house, office or agency if such place is a facility established and maintained in accordance with subsection 15 of Section 5 of this Act."

Subsection 15 of section 5, added by the same amendment (Ill. Rev. Stat. 1975, ch. 16½, par. 105, 1965 Ill. Laws 2026-27), empowered banks to establish a "facility," defined as a place restricted to "receiving deposits, cashing and issuing checks, drafts and money orders, changing money and receiving payments on existing indebtedness."

What services would the community offices and the electronic banking machines proposed by the ordinance perform? They would solicit loans, advise customers concerning any inquiries about business which the customers may have with the bank, accept deposits, make possible transfer of funds from one account to another in the financial institution, make possible cash withdrawals,

disburse proceeds of loans and serve as a vehicle to discharge debts to the financial institutions. Obviously, the functions to be performed by these community offices and electronic banking machines under the ordinance in question are of a banking character.

In *Illinois ex. rel. Lignoul v. Continental Illinois National Bank & Trust Co. of Chicago* (7th Cir. 1976), 536 F.2d 176, *cert. denied* (1976), 429 U.S. 871, 50 L. Ed. 2d 151, 97 S. Ct. 184, the Continental Illinois National Bank & Trust Company of Chicago had customer bank communication terminals which perform similar banking services at remote locations. These were held to be banks within 12 U.S.C. sec. 36(f) (1970), which in language very similar to that of our statute provides: "The term 'branch' as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business *** at which deposits are received, or checks paid, or money lent."

To the same effect are *Driscoll v. Northwestern National Bank* (8th Cir. 1973), 484 F.2d 173; *Independent Bankers Association of America v. Smith* (D.C. Cir. 1976), 534 F.2d 921; *Missouri ex rel. Kostman v. First National Bank* (8th Cir. 1976), 538 F.2d 219; *Colorado ex rel. State Banking Board v. First National Bank* (10th Cir. 1976), 540 F.2d 497. See also *First National Bank v. Walker Bank & Trust Co.* (1966), 385 U.S. 252, 17 L. Ed. 2d 343, 87 S. Ct. 492; *First National Bank v. Dickinson* (1969), 396 U.S. 122, 24 L. Ed. 2d 312, 90 S. Ct. 337.

We are, of course, aware that Federal decisions are not binding upon us in construing Illinois law, but they are of course persuasive when they construe a statute similar to one of our own. *People v. Crawford Distributing Co.* (1973), 53 Ill. 2d 332, 339.

It is urged that to be a "branch bank" in Illinois, the facilities must provide such banking services as in effect a second bank would. This argument is answered by the language of our statute. The terms "include any *** place

of business" and "any of a bank's other business" are decisive. Since we conclude both community offices and electronic banking machines are branch banks within the meaning of the Illinois Banking Act, the constitutional prohibition contained in article XIII, section 8, of the Constitution of 1970 becomes relevant. It states:

> "Branch banking shall be authorized only by law approved by three-fifths of the members voting on the question or a majority of the members elected, whichever is greater, in each house of the General Assembly."

Under the 1870 Constitution no such provision appeared. Instead, article XI, section 5, required that all banking laws be subject to approval at a referendum.

The 1970 Constitution makes manifest that only the General Assembly may make branch banking possible and only with an extraordinary majority. That only the General Assembly, not any city council, can make branch banking a reality is pointed out in the Constitutional Commentary to this section of the Constitution:

> "Section 8 replaces Sections 5, 6, 7 and 8 of Article XI of the 1870 Constitution. *Section 8 reflects the judgment of the Convention that regulation of the banking industry should be left to the General Assembly,* just as other financial institutions within the State are regulated by the General Assembly without extraordinary constitutional restrictions. One exception to this general policy is "branch banking", which is not constitutionally defined. Section 8 requires *that any law authorizing branch banking must be approved by either three-fifths of the members of each house of the General Assembly voting on the question or a majority of the members elected, whichever is greater."* (Emphasis added.) Ill. Ann. Stat., 1970 Const., art. XIII, sec. 8, Constitutional Commentary, at 310-11 (Smith-Hurd 1971).

Although the language of the Constitution itself is sufficient, reference to the proceedings makes manifest that home rule units are without jurisdiction over such predominantly State and national matters as banking. The report of the Local Government Committee states:

"It is clear \*\*\* that the powers of home-rule units relate to their own problems, not to those of the state or the nation. Their powers should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are generally recognized as falling within the competence of state rather than local authorities. Thus the proposed grant of powers to local governments extends only to matters 'pertaining to their government and affairs.' \*\*\* The intent \*\*\* is to give broad powers to deal with local problems to local authorities." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621-22 (hereinafter cited as Proceedings).)

"[Article VII] also makes clear that in case of conflict with local legislation, the state legislation always prevails when it expresses the intent to be exclusive and to preclude additional local regulation." 7 Proceedings 1643.

The Local Government Committee gave the following examples of the limitation on a local government's authority in matters pertaining to its government and affairs:

"Home-Rule County adopts an ordinance providing for limits upon rates of interests [*sic*] that may be charged on mortgage or other loans to residents of the county. This ordinance is not valid. The interest-control ordinance is not included in the home-rule powers granted [by section 6(a)] because of the extensive federal and state regulation of credit institutions.
\*\*\*
Home-Rule City adopts an ordinance limiting the rates that may be charged by the telephone company for local calls. Long standing state regulation of utility rates precludes this subject from being considered a matter pertaining to home-rule government and affairs." 7 Proceedings 1652.

So here, too, the business of banking is one that is pervasively regulated by the State and Federal governments.

Appellant relies on article VII, section 6(a), of the Constitution, which provides:

"Except as limited by this Section, a home rule unit may

exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

But, as we have seen, article XIII, section 8, of the 1970 Constitution mandates that the subject of and regulation of banking in general and branch banking in particular is one reserved to the General Assembly, and is not granted to home rule units.

In *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, this court held invalid a Cook County ordinance which imposed an additional filing fee on the filing of a civil complaint, with the proceeds to be used to support the county law library. In view of article VI of the Constitution—the judicial article—it was concluded (61 Ill. 2d 537, 542):

"The administration of justice under our constitution is a matter of statewide concern and

does not pertain to local government or affairs."

See also *Bridgman v. Korzen* (1972), 54 Ill. 2d 74.

The proceedings of the constitutional convention show that the major debate regarding the constitutional provisions for banking was whether the banking provisions of the 1870 Constitution (art. XI, secs. 5 through 8) should be retained or should simply be eliminated in their entirety. The latter course was recommended by the General Government Committee in its Proposal No. 8 (6 Proceedings 533-54). A minority report (Proposal No. 8A) proposed that the substance of article XI, section 5, of the 1870 Constitution be retained (6 Proceedings 555-62). That section provided in effect that all legislation affecting banking must be submitted to a referendum.

The minority report noted that a major concern underlying its proposal was a fear that if the General Assembly were not limited by the referendum requirement it might authorize branch banking, a development which

many persons opposed as a threat to smaller banks through expansion by larger banks. There was extensive debate on this question during the proceedings (see 2 Proceedings 1109-53). The ultimate result was article XIII, section 8, of the present constitution, which eliminated the referendum requirement but imposed the requirement of a three-fifths majority in the General Assembly.

This history of article XIII, section 8, reinforces our conclusion that branch banking is a matter of concern primarily to the State as a whole, and that unitary control of it should rest with the General Assembly. It cannot be subject to erosion through the exercise of concurrent regulation by local home rule entities.

For the reasons expressed, we conclude that the city ordinance is void, and we accordingly affirm the judgment of the circuit court.

*Judgment affirmed.*