2019 IL App (2d) 170775
No. 2-17-0775
Opinion filed July 30, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DAVID D. WALKER, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15-MR-189 |
| | ) | |
| JOSEPH BRUSCATO, in His Official | ) | |
| Capacity as Winnebago County State's | ) | |
| Attorney, | ) | Honorable |
| | ) | J. Edward Prochaska, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Presiding Justice Birkett and Justice Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, David D. Walker, filed a complaint alleging that defendant, Joseph Bruscato, in his official capacity as the state's attorney of Winnebago County, improperly denied his requests to disclose under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)). The trial court granted summary judgment in favor of defendant and against plaintiff. Since the entry of that judgment, Marilyn Hite Ross succeeded Joseph Bruscato as state's attorney.[1]

_____

    [1] Pursuant to section 2-1008(d) of the Code of Civil Procedure (735 ILCS 5/2-1008(d) (West 2016)), the present official should be substituted for the predecessor. Ms. Hite Ross has filed her appearance in this appeal.

Plaintiff appeals, arguing that the trial court erred because (1) defendant did not provide him with the transcript he requested, (2) defendant failed to provide and maintain the list he sought, as required by section 5 of FOIA (5 ILCS 140/5 (West 2016)), (3) itinerary sheets for individual indictments presented to the grand jury are not exempt from disclosure under section 7(1)(a) of FOIA (*id*. § 7(1)(a)) or section 112-6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/112-6 (West 2016)), and (4) the individual deliberations and votes of the grand jurors for indictments returned are not exempt from disclosure.  For the following reasons, we affirm.

¶ 2                                I. BACKGROUND

¶ 3                          A. Plaintiff's Prior Litigation

¶ 4     Initially, we take judicial notice of our own records (see *Auto-Owners Insurance Co. v. Konow*, 2016 IL App (2d) 150823, ¶ 5), namely, our decision *People v. Walker*, 2016 IL App (2d) 140922-U, in which we affirmed the denial of plaintiff's section 2-1401 (735 ILCS 5/2-1401 (West 2016)) petition from his murder conviction.  We also note that plaintiff asked the trial court and this court to take judicial notice of that decision.

¶ 5     In 2001, plaintiff was charged by indictment with the first-degree murder (720 ILCS 5/9-1(a)(3) (West 2000)) of Cornell Thomas.  The bill of indictment is a single sheet.  The bill appears to contain the foreperson's signature.  The back of the bill has an area with a heading "List of Witnesses" and a handwritten entry, "Det. Redmond."  The back also states, "returned in open court this 6th day of May, 2001."  However, a file stamp indicates that the bill was filed on June 1, 2001.  On July 19, 2001, a hearing took place at which plaintiff's speedy-trial rights were at issue.  The State told the trial court that it "brought a superseding bill against [codefendant] Nate Carter and a bill on the same day against David Walker on June 6th, so that's when I presented it to the Grand Jury, so, I think [the bill] is wrong as far as the notation of May."  The

trial court concluded, and the parties agreed, that June 6, 2001, was the date of the indictment for purposes of calculating the speedy-trial deadline for plaintiff.

¶ 6       Plaintiff had a jury trial that resulted in a conviction of the murder charged in the indictment.  While plaintiff was awaiting sentencing, he filed, *pro se*, a motion to dismiss the indictment, arguing, in part, that "[t]he grand jury minutes of [June 6, 2001,] should of beared [*sic*] the names of Nate Carter [codefendant] and David Walker instead of, '*In re* Matter of Nathaniel Carter.' "  The transcript of the grand jury testimony indicates that, on June 6, 2001, Robert Redmond, a detective with the Rockford Police Department, testified concerning his investigation of Thomas's shooting death.  Redmond's testimony tended to show plaintiff's role in the shooting and revealed an inculpatory statement plaintiff made to police.  Redmond's testimony centered on plaintiff but also related to Carter's involvement.

¶ 7       The State responded to plaintiff's motion to dismiss the indictment by stating that the "grand jury minutes regarding the charge of first degree murder were turned over to [plaintiff] prior to trial."

¶ 8        On April 25, 2003, the day of the sentencing hearing, the trial court heard plaintiff's motion to dismiss the indictment.  Regarding the apparent miscaptioning of the grand jury transcript, Assistant State's Attorney Steven Biagi stated:

> "I did *** give to Mr. Walker personally on March 28th of this year, a copy of all the Grand Jury testimony that has ever been presented relating to either of his cases.  The Grand Jury testimony of Robert Redmond is the sworn testimony *** that resulted in the Bill of Indictment for first degree murder.  The court reporter simply put on the title page that it was the matter of Nathaniel Carter.  That's an issue of administrative ease ***."

The trial court denied plaintiff's motion to dismiss the indictment.  That same day, the trial court sentenced plaintiff to 50 years' imprisonment.  This court affirmed the conviction and sentence

on direct appeal. *People v. Walker*, 357 Ill. App. 3d 1094 (2005) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 9     Thereafter, plaintiff filed seven separate petitions under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)).  Plaintiff abandoned the first three petitions, and the trial court dismissed the fourth petition as frivolous.  Plaintiff filed his fifth and sixth petitions in May 2006 and his seventh petition in September 2006.  On January 3, 2011, plaintiff filed what he called an amended version of his sixth petition.  Count I claimed that there was no jurisdiction to indict plaintiff, because the record lacked the grand jury's swearing or impanelment.  Plaintiff thus asserted that the indictment was void and, therefore, the conviction was void as well.  Count II claimed that the State committed fraud on the court by "passing off the Carter transcript as [plaintiff's] transcript."  After the trial court granted the State's motion to dismiss, plaintiff filed a motion to reconsider and for leave to file an amended petition with two additional counts.  Count III alleged that the grand jury had not heard evidence against plaintiff, that the caption of the transcript did not contain plaintiff's name, and that the grand jury indicted plaintiff 31 days before Redmond testified.  Count IV rested on the same cluster of claims.  The trial court denied plaintiff's motion.  This court affirmed the trial court decisions to dismiss plaintiff's petition and to deny him leave to amend it.  *Walker*, 2016 IL App (2d) 140922-U, ¶ 29.

¶ 10                              B. Current FOIA Litigation

¶ 11    In 2014, plaintiff sent four requests to the Winnebago County State's Attorney's Office pursuant to FOIA (5 ILCS 140/1 *et seq.* (West 2016)).  In plaintiff's first request, dated July 15, 2014, he sought "a copy of my grand jury transcript in support of my indictment for 1st Degree Murder."  In response to plaintiff's request, on July 22, 2014, David Kurlinkus, the FOIA officer for the Winnebago County State's Attorney's Office, sent plaintiff a transcript of Redmond's

testimony. Kurlinkus noted in his cover letter to plaintiff that this was "the fourth time this office has produced this document to you *** pursuant to FOIA." The cover page of the transcript states, "BEFORE THE GRAND JURY WINNEBAGO COUNTY, ILLINOIS," and is titled "IN THE MATTER OF NATHANIEL CARTER." According to the transcript, Redmond testified to the grand jury as follows.

¶ 12 On October 1, 2000, Redmond was assigned to investigate a murder that occurred in the 300 block of Lincoln Avenue in Rockford. The victim was Thomas, who was found dead on Lincoln Avenue. An autopsy determined that Thomas died from a gunshot wound to the chest. The Rockford Police Department received a tip that plaintiff was possibly involved in the murder. Based on that tip, Redmond went to plaintiff's apartment and found a .38-caliber revolver and a .44-caliber revolver. The Illinois State Police Crime Lab determined that Thomas died from a bullet fired from the .38-caliber revolver. Redmond then spoke with plaintiff, who provided a signed written statement. Redmond testified that, as reflected in the written statement, plaintiff told Redmond the following.

¶ 13 The previous Saturday, plaintiff, Carter, and a third man, James Hackler, planned an armed robbery at a house on Lincoln Avenue. Plaintiff drove Carter and Hackler to an address on Lincoln and gave the .38-caliber revolver to Hackler. Carter and Hackler exited the car. While plaintiff was in the car, he heard gunshots. Carter returned to the car.

¶ 14 When the prosecutor asked Redmond whether he recognized "Grand Jury Exhibit No. 1," Redmond testified that it was the three-page written statement that he had taken from plaintiff on October 5, 2000. Redmond testified that the statement was signed by himself and plaintiff. The prosecutor presented plaintiff's statement to the grand jury.

¶ 15 The last page of the grand jury transcript contains a "Certificate of Shorthand Reporter," naming "Cindia L. Rosatto." Attached to the transcript is a "Grand Jury Exhibit," namely

plaintiff's three-page statement. Plaintiff's statement is consistent with Redmond's testimony. The statement also indicates that, after plaintiff heard gunshots while waiting in his car, Carter ran back to plaintiff's car, "yelling, let's go, go." Further, plaintiff stated that he drove around the block and that, when he drove back onto Lincoln, he saw "this boy laying in the street face down [and said to Carter] you all killed Dude."

¶ 16 Plaintiff's second request, dated August 12, 2014, asked for a "current or previous list of the types and categories of record available for inspection and copying maintained in your office." Kurlinkus responded to plaintiff in a letter dated August 19, 2014, stating,

> "[T]here are no documents under the control of the Winnebago State's Attorney that are responsive to your request. Specifically, this office does not have 'a current list of the types and categories of records available for inspection and copying maintained by your office.' [FOIA] does not require public entities to create documents that do not exist in response to a FOIA request.

> * * *

> This does not constitute a denial of your request."

¶ 17 Plaintiff's third FOIA request, dated October 7, 2014, asked for a copy of the "Itinerary Record/Sheet of individual indictments presented to the grand jury for presentation for May and June 2001." Plaintiff's fourth FOIA request, also dated October 7, 2014, asked for a copy of "individual deliberation and votes of the grand jurors for indictments returned in May and June 2001." In response to plaintiff's third and fourth requests, in a letter dated October 12, 2014, Kurlinkus informed plaintiff that the records he requested would not be produced, because section 7(1)(a) of FOIA (*id.* § 7(1)(a)) exempts records that are specifically prohibited from disclosure by federal or state law. Kurlinkus further explained that section 112-6(a) of the Code (725 ILCS 5/112-6(a) (West 2016)) states that grand jury proceedings are open only to the

"State's Attorney, his reporter and any other person authorized by the court or by law." Therefore, Kurlinkus concluded, "since the documents you request, if they exist, are exempt from disclosure under FOIA, this office will not provide you a copy of them."

¶ 18                           C. Complaint and Answer

¶ 19    On March 26, 2015, plaintiff, *pro se*, filed a four-count complaint for declaratory and injunctive relief under FOIA, based on the above FOIA requests and responses. In count I, plaintiff alleged that defendant violated FOIA by failing to provide plaintiff with a copy of the grand jury transcript that he requested on July 15, 2014, namely, "a copy of my grand jury transcript in support of my indictment for 1st Degree Murder." In count II, plaintiff alleged that defendant violated FOIA by failing to provide plaintiff with a "section 5-list, of the types and categories of records available for inspection and copying maintained in their office," as requested in plaintiff's August 12, 2014, letter. See 5 ILCS 140/5 (West 2016). In count III, plaintiff alleged that defendant violated FOIA by failing to provide plaintiff with "a copy of the itinerary record/sheet of individual indictments presented to the Grand Jury for presentation for May and June of 2001," as requested in plaintiff's October 7, 2014, letter. In count IV, plaintiff alleged that defendant violated FOIA by failing to provide plaintiff with a "copy of the individual deliberations and votes of the grand jurors for indictments returned in May and June of 2001," as requested in plaintiff's letter dated October 7, 2014. Plaintiff sought a declaration that defendant, as head of the state's attorney's office, violated FOIA; an injunction enjoining defendant from denying plaintiff's requests; an order compelling defendant to comply with plaintiff's requests; and an order imposing a penalty on defendant of $2500 to $5000 for each failure to comply with FOIA.

¶ 20    On September 8, 2015, plaintiff's attorney filed an amended complaint that was essentially the same as the original complaint but added that the violations of FOIA were "done willfully and intentionally, or otherwise in bad faith."

¶ 21    On October 2, 2015, defendant filed his answer and affirmative defenses to plaintiff's complaint. Regarding count I, defendant denied that plaintiff's FOIA request for his "Grand Jury transcript in support of [his] indictment for first degree murder" was denied. Defendant thus denied that he violated FOIA or that he did so willfully, intentionally, or in bad faith. Regarding count II, the request for the section 5 list of records, defendant asserted the following defenses. Defendant did not deny plaintiff the list he sought; rather, plaintiff was advised that defendant did not have any documents in his possession or control responsive to plaintiff's request. Plaintiff cannot maintain an action under section 11 of FOIA (5 ILCS 140/11 (West 2016)) for a denial of access to inspect or copy nonexistent public records. Regarding count III, the request for records of indictments, defendant asserted the following defenses. The records sought by plaintiff, the itinerary sheets for individual indictments presented to the grand jury for May and June 2001, are exempt from disclosure under section 7(1)(a) of FOIA (*id*. § 7(1)(a) (exempting from FOIA "[i]nformation specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law")). Section 112-6 of the Code (725 ILCS 5/112-6 (West 2016)) prohibits the state's attorney from disclosing matters occurring before the grand jury except to such personnel as are deemed necessary by the state's attorney in the performance of his or her duty or as directed by court order. Therefore, defendant was prohibited by section 112-6 from complying with plaintiff's request as stated in count III. Regarding count IV, seeking individual grand jury deliberations and votes, defendant asserted the affirmative defense that section 7(1)(a) of FOIA and section 112-6 of the Code prohibited

such disclosure. Section 112-6 of the Code prohibits the disclosure of any information other than the deliberations and votes of the grand jury.

¶ 22                    D. Cross-Motions for Summary Judgment

¶ 23    On January 19, 2017, defendant moved for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2016)) as to all counts of plaintiff's amended complaint.

¶ 24    On May 18, 2017, plaintiff moved for summary judgment as to all counts of his amended complaint. As to count I, plaintiff argued that defendant failed to comply with his FOIA request for "his transcript" because the transcript he received contained Carter's name and the record showed that there was a separate grand jury investigation of plaintiff. Plaintiff also argued that defendant was collaterally estopped from asserting that he provided plaintiff with the correct transcript, due to an order entered in a prior FOIA case.

¶ 25    Regarding count II, plaintiff argued the following. Defendant's assertion that he did not have the list of records was, in itself, a violation of section 5 of FOIA. Further, after plaintiff filed his complaint, defendant "provided an update of the list that it said it did not have." Whether the list did not exist, still does not exist, or now exists, plaintiff was entitled to summary judgment regarding count II. Plaintiff attached an e-mail from defendant's counsel to plaintiff's counsel, stating, "Attached is a copy of a recently updated page from the Winnebago County State's Attorney's website, showing a list of records available under FOIA."

¶ 26    Regarding count II, defendant responded as follows. Plaintiff misread the e-mail in question, which clearly stated that the *website page* was recently updated, not the list of records. Further, plaintiff received the list of records through the e-mail. Therefore, plaintiff was not denied access to the list he requested, and defendant was entitled to summary judgment as to count II.

¶ 27    Regarding count III, plaintiff argued that section 112-6 of the Code did not preclude defendant from disclosing "a copy of the Itinerary Record/Sheet of individual indictments presented to the grand jury for presentation for May and June of 2001," because plaintiff did not request anything occurring before the grand jury, as a "list is not an occurrence."  Further, the interests of justice required disclosure (725 ILCS 5/112-6(c)(3) (West 2016)), and the requirement of secrecy no longer applies, and is no longer needed, due to the passage of time.

¶ 28    Regarding count IV, plaintiff argued that section 112-6 of the Code did not preclude defendant from disclosing "a copy of the individual deliberations and votes of the grand jurors for indictments returned in May and June 2001," because section 112-6(b) (*id*. § 112-6(b)) prohibits disclosure only of "[m]atters other than the deliberations and vote of any grand juror."

¶ 29    On August 29, 2017, the trial court granted summary judgment on all counts in favor of defendant and against plaintiff.  On September 27, 2017, plaintiff filed his notice of appeal.

¶ 30                                  II. ANALYSIS

¶ 31    Summary judgment motions are governed by section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2016)).  Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Id.*; *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 30.  A genuine issue of material fact exists when the material facts are disputed, or when the material facts are undisputed but reasonable persons might draw different inferences from those undisputed facts.  *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25.  "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt."  *Seymour v. Collins*, 2015 IL 118432, ¶ 42.

¶ 32    When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. However, the filing of cross-motions for summary judgment does not establish that there is no genuine issue of material fact, nor does it obligate a court to render summary judgment. *Id.*

¶ 33    Our review of the trial court's grant of summary judgment is *de novo*. *Perry*, 2018 IL 122349, ¶ 30. *De novo* review is also appropriate to the extent that this case turns on statutory construction. *Id.*

¶ 34    The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature. *Oswald v. Hamer*, 2018 IL 122203, ¶ 10. All other rules of statutory construction are subordinate to this cardinal principle. *Id.* The most reliable indicator of the legislature's intent is the plain language of the statute itself, which must be given its plain and ordinary meaning. *Id.* The court must view the statute as a whole, construing words and phrases in the context of other relevant statutory provisions and not in isolation. *Id.* Further, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.*

¶ 35    FOIA expressly declares its underlying public policy and legislative intent in section 1, which provides that "all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2016). Section 1 explains that "[s]uch access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id.* Consequently, section 1 provides that "[i]t is a fundamental obligation of government to operate

openly and provide public records as expediently and efficiently as possible in compliance with this Act." *Id.* As indicated by this "clear expression of legislative intent," public records are presumed to be open and accessible. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 25. FOIA is to be liberally construed to achieve the goal of providing the public with easy access to government information. *Id.* Thus, a public body must comply with a proper request for information unless one of FOIA's narrow statutory exemptions applies. *Id.*

¶ 36                                          A. Count I

¶ 37    Regarding count I, plaintiff argues that the trial court erred by entering summary judgment in defendant's favor, because the facts are disputed regarding whether plaintiff was provided with the transcript he requested. Plaintiff contends that the State admitted that there were two separate grand jury hearings, one for him and one for Carter. We disagree with plaintiff.

¶ 38    The trial court determined that "the facts are *undisputed* that Plaintiff was provided with the grand jury transcript that he requested under FOIA. *** Therefore[,] Plaintiff cannot maintain a cause of action under Section 11 of FOIA and Defendant is entitled to judgment as a matter of law." (Emphasis added.) Plaintiff asserts that the facts are *not* undisputed, because two separate hearings were conducted: one for Carter, a transcript of which plaintiff received, and one investigating himself, a transcript of which he did not receive. Plaintiff supports his contention that there were two separate hearings with a statement the prosecutor made in plaintiff's criminal case. That statement is quoted in *Walker*, 2016 IL App (2d) 140922-U, ¶ 5: "The State told the court that it 'brought a superseding bill against [codefendant] Nate Carter and a bill on the same day against [plaintiff] on June 6th, so that's when I presented it to the Grand Jury ***.' " However, nothing about the prosecutor's statement indicates that the superseding bill against Carter and the bill against plaintiff were brought during separate grand jury hearings

producing two separate transcripts. Indeed, this court stated: "Nowhere in the statutes and rules governing the sitting of a grand jury can one find a requirement that a grand jury proceed by distinct 'matters,' and nothing in those statutes and rules is a requirement that proceedings be limited to a prespecified target or targets." *Id.* ¶ 20. We also determined that the June 6, 2001, transcript titled "*In re* Matter of Nathaniel Carter," containing Redmond's grand jury testimony that inculpated plaintiff, was testimony " 'in the matter of [plaintiff].' " *Id.* In this case, plaintiff requested "a copy of [his] grand jury transcript in support of [his] indictment for 1st Degree Murder." The record in this case and our findings of fact and law in *Walker* establish that defendant provided plaintiff with the transcript he requested. Indeed, plaintiff is collaterally estopped from relitigating this issue.[2]

¶ 39   The doctrine of collateral estoppel bars relitigation of an issue that was already decided in a prior case. Collateral estoppel applies if all three of the following propositions are met: (1) the issue decided in the prior case is identical to the one presented in the current case, (2) there was a final adjudication on the merits in the prior case, and (3) the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior case. *Pine Top Receivables of Illinois, LLC v. Transfercom, Ltd.*, 2017 IL App (1st) 161781, ¶ 8. Here, all three requirements have been met. The main issue in *Walker*, 2016 IL App (2d) 140922-U, was whether the trial court properly dismissed plaintiff's postconviction claim that the State had committed fraud on the trial court by passing off the Carter transcript as plaintiff's transcript. *Id.* ¶¶ 15, 18. The trial court dismissed this count, and this court affirmed after determining that the Carter transcript and

---

[2] We note that the law-of-the-case doctrine does not apply here, because *Walker* was a different case. See *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 108.

plaintiff's transcript were one and the same. *Id.* ¶ 20. Finally, plaintiff is the same party in both actions.

¶ 40 Ironically, plaintiff argues that defendant is collaterally estopped from claiming that he provided plaintiff with the transcript he requested, because of an order entered by a trial court in a prior FOIA case, No. 08-MR-189. However, plaintiff cannot establish the first element of collateral estoppel, because the issues presented are not identical. In the March 31, 2011, order plaintiff cites, the trial court stated as follows: "[T]he Grand Jury Transcript of Nathaniel Carter heretofore produced on or about December 18, 2008, is, in fact a true copy of the Grand Jury Transcript of Nathaniel Carter for the proceedings before the Winnebago County Grand Jury on June 6, 2001."

¶ 41 However, plaintiff has argued a false enthymeme. He assumes a premise that is not in evidence, *i.e.* that a grand jury transcript can relate only to a single defendant. To the contrary, the premise was previously rejected in *Walker*. Simply put, the order above does not address the relevant issue here: that is, whether the grand jury transcript of Carter is *also* the grand jury transcript of plaintiff. Indeed, the order says nothing to refute what this court already determined "with reasonable certainty" about this issue: the transcript of Carter is the transcript of plaintiff. *Id.* Thus, plaintiff has failed to establish that the issues are the same and that collateral estoppel applies. Accordingly, the trial court properly determined that (1) defendant provided plaintiff with the grand jury transcript he requested, (2) plaintiff could not maintain a cause of action under FOIA, and (3) defendant was entitled to judgment as a matter of law as to count I of plaintiff's complaint.

¶ 42                                              B. Count II

¶ 43 Plaintiff argues that he was entitled to summary judgment regarding count II. Count II of plaintiff's amended complaint alleged that he requested "a current or previous list of the types

and categories of record available for inspection and copying maintained in [defendant's] office" and that defendant denied plaintiff's request. Defendant responded in his answer and affirmative defense that he did not deny plaintiff's request; "rather, plaintiff was advised that defendant did not have any documents in its possession or control responsive to Plaintiff's request." In granting defendant summary judgment regarding count II, the trial court reasoned: "[T]he facts are undisputed that the list of records requested by Plaintiff does not exist. Plaintiff cannot be denied access to inspect or copy a public record that does not exist. Therefore, Plaintiff cannot maintain a cause of action under Section 11 of FOIA."

¶ 44 Section 11(a) of FOIA provides, "Any person *denied access* to inspect or copy any public record by a public body may file suit for injunctive or declaratory relief." (Emphasis added.) 5 ILCS 140/11(a) (West 2016).

¶ 45 Plaintiff contends that the list of records did exist at the time of his request because after he filed his complaint defendant sent him an e-mail stating, "Attached is a copy of a recently updated page from the Winnebago County State's Attorney's website, showing a list of records available under FOIA." However, this e-mail establishes only that, sometime after defendant replied to plaintiff's request, defendant updated his website. A request for records not yet created is invalid. See *Harwood v. McDonough*, 344 Ill. App. 3d 242, 249 (2003).[3]

_____

[3] Federal courts addressing this issue also provide persuasive guidance, although their decisions are not binding on this court. See, *e.g.*, *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 996 (2007). Several federal courts have held that requests for future records are invalid under the federal Freedom of Information Act. See, *e.g.*, *Mandel Grunfeld & Herrick v. United States Customs Service*, 709 F.2d 41, 43 (11th Cir. 1983); *Lybarger v. Cardwell*, 577 F.2d 764, 765-66 (1st Cir. 1978); *Tuchinsky v. Selective Service*

¶ 46    Plaintiff also argues that he was entitled to summary judgment because defendant failed to *maintain* the list he sought, as required by section 5 of FOIA.  However, plaintiff's argument is belied by defendant's  e-mail.  Plaintiff contends that setting out a list on a website is useless to him because he is in prison and has no access to a computer and no computer skills.  However, defendant sent the e-mail to plaintiff's attorney.   This constituted notice to plaintiff and knowledge of the e-mail's contents.  See *Segal v. Department of Financial & Professional Regulation*, 404 Ill. App. 3d 998, 1003 (2010).  Therefore, plaintiff has not established that defendant violated section 5 of FOIA by failing to "maintain a current or previous list."  See 5 ILCS 140/5 (West 2016).

¶ 47    There is no dispute that (1) the list of records plaintiff initially sought did not exist at the time and (2) plaintiff eventually received the list.  Thus, the trial court properly determined that plaintiff could not maintain a cause of action under FOIA and that defendant was entitled to judgment as a matter of law as to count II of plaintiff's complaint.

¶ 48                                C. Count III

¶ 49    Regarding count III, plaintiff argues that the trial court erred by granting summary judgment in favor of defendant, because "a copy of the Itinerary Record/Sheet of individual indictments presented to the grand jury for presentation for May and June of 2001" was not exempt from disclosure under section 7(1)(a) of FOIA or section 112-6 of the Code.

¶ 50    Based on FOIA's clear expression of legislative intent, our supreme court has held that public records are presumed to be open and accessible.  *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407 (1997).  FOIA is to be liberally construed to achieve the goal of providing the public with easy access to government information.  *Southern Illinoisan v.*

_____

*System*, 418 F.2d 155, 158-59 (7th Cir. 1969).

*Illinois Department of Public Health*, 218 Ill. 2d 390, 416 (2006) (and cases cited therein).  Thus, FOIA's exceptions to disclosure are construed narrowly so as not to defeat the intended statutory purpose.  *Id.* at 416-17.  Accordingly, when a public body receives a proper request for information, it must comply with the request unless one of FOIA's narrow statutory exemptions applies.  5 ILCS 140/3(a) (West 2016); see *Southern Illinoisan*, 218 Ill. 2d at 417; *Lieber*, 176 Ill. 2d at 407-08.

¶ 51    Section 7(1) of FOIA provides that certain categories of records "shall be exempt from inspection and copying."  5 ILCS 140/7(1) (West 2016).  Pertinent to this appeal, section 7(1)(a) exempts "[i]nformation specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law."  *Id.* § 7(1)(a).  The trial court determined that disclosure of the requested materials was prohibited under section 112-6(c)(1) of the Code (725 ILCS 5/112-6(c)(1) (West 2016)), which bars disclosure of "matters occurring before the Grand Jury," rendering the requested materials exempt from disclosure pursuant to section 7(1)(a) of FOIA.

¶ 52    "The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders."  (Internal quotation marks omitted.)  *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶30; see also *Costello v. United States*, 350 U.S. 359, 362 (1956).  "The function of a grand jury is not to determine the sufficiency of evidence to convict [citation] but rather to determine whether there is probable cause to believe a crime has been committed and, in the process, exonerate innocent individuals accused of crimes [citation]."  *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 30; see also *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972) (explaining that the dual function of the grand jury is to determine whether there is probable cause to believe that a crime has been committed and to protect individuals against "unfounded criminal prosecutions"); accord *In re May 1991 Will*

*County Grand Jury*, 152 Ill. 2d 381, 392 (1992). The policy reasons for maintaining grand jury secrecy include protecting from unwarranted exposure those under investigation who are not indicted. See, *e.g.*, *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 219 n.10 (1979); *People v. Johnson*, 31 Ill. 2d 602, 605 (1964).

¶ 53    Section 112-6 of the Code addresses the secrecy of grand jury proceedings in the Illinois criminal justice system. Subsection (b) of section 112-6 provides that "[m]atters other than the deliberations and vote of any grand juror shall not be disclosed by the State's Attorney, except as otherwise provided for in subsection (c)." 725 ILCS 5/112-6(b) (West 2016). Subsection (c)(1), subject to certain exceptions not relevant here, prohibits the disclosure of "matters occurring before the Grand Jury." *Id.* § 112-6(c)(1).

¶ 54    Plaintiff argues that the trial court erred by determining that the materials he sought in count III constituted "matters occurring before the grand jury," because a list is not an occurrence and the list was created by defendant's staff for use before and after the list reached the grand jury room. Defendant counters that the protections of section 112-6 apply here because releasing the itinerary records requested by plaintiff would reveal not only the names of those indicted by the grand jury but also the names of potentially innocent persons. We agree with defendant.

¶ 55    Here, plaintiff sought "the itinerary record/sheet of indictments presented to the grand jury": in other words, the list of names of individuals under investigation before the grand jury and the dates of the hearings. Complying with plaintiff's request could expose the names of innocent persons who were under investigation but were not indicted, thereby defeating one of the reasons for maintaining grand jury secrecy. See *Johnson*, 31 Ill. 2d at 605 ("The policy of grand jury secrecy is intended *** to protect an accused person who is not indicted against unwarranted exposure ***."). Further, we reject plaintiff's contention that there is no need for

secrecy 16 years after the creation of an itinerary sheet. "[T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Douglas Oil Co.*, 441 U.S. at 222. Section 112-6 of the Code prohibited disclosure of the requested materials, triggering the exemption provided by section 7(1)(a) of FOIA. Accordingly the trial court properly granted summary judgment in favor of defendant and against plaintiff regarding count III.

¶ 56    In addition, section 112-6 of the Code is modeled after Rule 6(e) of the Federal Rules of Criminal Procedure. *People ex rel. Sears v. Romiti*, 50 Ill. 2d 51, 58 (1971). Rule 6(e) prohibits grand jurors, government attorneys, and other persons attached to federal grand jury proceedings from disclosing a "matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B)(i)-(vii). Because the federal rule and the statute contain substantially similar language, we look to federal cases in construing the statute. See *People ex rel. Lignoul v. City of Chicago*, 67 Ill. 2d 480, 484 (1977); see also *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 24 (using federal case law for guidance in construing phrase "decision on the merits" as used in state class certification statute where statute was modeled on federal rule of civil procedure); *Board of Education v. Verisario*, 143 Ill. App. 3d 1000, 1005 (1986) (this court used a federal case interpreting Rule 6(e) to inform our application of section 112-6(b) of the Code).

¶ 57    In *Murphy v. Executive Office for United States Attorneys*, 789 F.3d 204, 209-10 (D.C. Cir. 2015), the federal court interpreted the phrase "a matter occurring before the grand jury" for purposes of Rule 6(e) to include the dates and times of day that a grand jury met. Therefore, the court affirmed the government's denial of a prisoner's FOIA request for such information. *Id.* at 213. Accordingly, we determine that a list of individuals presented for indictment is also encompassed by the phrase "matters occurring before the grand jury."

¶ 58                                D. Count IV

¶ 59    In count IV, plaintiff sought "a copy of the individual deliberations and votes of the grand jurors for indictments returned in May and June of 2001." Plaintiff argues that he was entitled to summary judgment on this count because section 112-6(b) does not prohibit disclosure of "[t]he deliberations and vote of any grand juror." Defendant counters that the statute, when read as a whole, prohibits disclosure of deliberations and vote of the grand jury. We agree with defendant.

¶ 60    In determining the plain meaning of a statute, we consider the subject the statute addresses and the legislative purpose in enacting it. *People v. Dominguez*, 2012 IL 111336, ¶ 16. Where statutory provisions are clear and unambiguous, the plain language as written must be given effect, without reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Wright*, 194 Ill. 2d 1, 29 (2000). A court may not inject provisions that are not found in a statute. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). Furthermore, our supreme court has repeatedly held that statutes should be read as a whole and construed so that no part is rendered meaningless or superfluous. *People v. Lloyd*, 2013 IL 113510, ¶ 25.

¶ 61    Section 112-6 provides in relevant part:

"Secrecy of proceedings. (a) Only the State's Attorney, his reporter and any other person authorized by the court or by law may attend the sessions of the Grand Jury. *Only the grand jurors shall be present during the deliberations and vote of the Grand Jury.* If no reporter is assigned by the State's Attorney to attend the sessions of the Grand Jury, the court shall appoint such reporter.

(b) Matters other than the deliberations and vote of any grand juror shall not be disclosed by the State's Attorney, except as otherwise provided for in subsection (c). The court may direct that a Bill of Indictment be kept secret until the defendant is in custody or has given bail and in either event the clerk shall seal the Bill of Indictment and no

person shall disclose the finding of the Bill of Indictment except when necessary for the issuance and execution of a warrant.

 (c)(1) Disclosure otherwise prohibited by this Section of matters occurring before the Grand Jury, other than its deliberations and the vote of any grand juror, may be made to:

 a. a State's Attorney for use in the performance of such State's Attorney's duty; and

 b. such government personnel as are deemed necessary by the State's Attorney in the performance of such State's Attorney's duty to enforce State criminal law."

(Emphasis added.)  725 ILCS 5/112-6(a), (b), (c) (West 2016).

¶ 62 Reading section 112-6 as a whole, as we must, it is apparent that the legislature intended to maintain the secrecy of the deliberations and vote of a grand jury.  Section 112-6(a) provides that "[o]nly the grand jurors shall be present during the deliberations and vote of the Grand Jury."  *Id.* § 112-6(a).  Further, section 112-6(c)(1) provides that "[d]isclosure otherwise prohibited by this Section of matters occurring before the Grand Jury, other than its deliberations and the vote of any grand juror, may be made" to specified individuals.  *Id.* § 112-6(c)(1).  The language "other than its deliberations and the vote of any grand juror" in section 112-6(c)(1) demonstrates the legislature's clear intent that those deliberations and votes may not be disclosed.  See *Lloyd*, 2013 IL 113510, ¶ 25 (one of the purposes of secrecy is to insure the grand jury freedom in its deliberations); see also *People v. Leavitt*, 2014 IL App (1st) 121323, ¶ 56 (interpreting section 112-6).  Thus, reading the statute as a whole, defendant did not violate FOIA by denying plaintiff's request for "a copy of the individual deliberations and votes of the grand jurors for indictments returned in May and June of 2001."  Accordingly, the trial court properly granted summary judgment in favor of defendant and against plaintiff as to count IV.

¶ 63    Our interpretation is in accord with federal law.  Federal courts interpreting the phrase "matters occurring before the grand jury" for purposes of Rule 6(e) have found that the phrase encompasses any material that tends to "reveal some secret aspect of the grand jury's investigation, [including] the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." (Internal quotation marks omitted.)  *Lopez*, 393 F.3d at 1349; see *United States v. Phillips*, 843 F.2d 438, 441 (11th Cir. 1988) ("The term 'matters occurring before a grand jury' has been defined to include anything that will reveal what transpired during the grand jury proceedings.").

¶ 64                                    E. Deposition Notices

¶ 65    Finally, plaintiff argues that the trial court erred by suspending discovery and that, on remand, discovery should proceed.  In particular, plaintiff sent notices of discovery depositions to defendant, seeking to depose Biagi and Rosatto (a/k/a Schwitters), the prosecutor and court reporter, respectively, at plaintiff's grand jury proceedings.  Defendant moved to strike plaintiff's deposition notices, arguing that the deposition questions and answers could disclose secret grand jury matters.  We have determined that the trial court properly granted summary judgment in favor of defendant and against plaintiff, in part because plaintiff has already received his grand jury transcript.  Therefore, we see no reason for further discovery regarding this matter, and a remand is not necessary.

¶ 66                                    III. CONCLUSION

¶ 67    For the reasons stated, we affirm the trial court's order.

¶ 68    Affirmed.